FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 1 9 2013

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**WELSPUN PIPES, INC. and WELSPUN TUBULAR, LLC**                  **PLAINTIFFS**

vs.                                   NO. 4:13 cv 418 JLH

**LIBERTY MUTUAL FIRE INSURANCE COMPANY**                  **DEFENDANT**

## COMPLAINT

COMES NOW Plaintiffs, Welspun Pipes, Inc., and Welspun Tubular, LLC (collectively, "Welspun"), and for their Complaint against Defendant, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), state as follows:

This case assigned to District Judge___Holmes

and to Magistrate Judge_____Deere

### I.    PARTIES

1.    Welspun Pipes, Inc., is a Delaware corporation qualified to do business in Arkansas.  Its principal place of business is at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

2.    Welspun Tubular, LLC is a Delaware corporation qualified to do business in Arkansas.  Its principal place of business is at 9301 Frazier Pike Road, Little Rock, Arkansas 72206.

3.    The insured property in dispute is located at 9301 Frazier Pike Road, Little Rock, Arkansas 72206.

4.    Upon information and belief, Liberty Mutual is a corporation qualified to do business in Arkansas.  Its principal place of business is at 2000 Westwood Drive, Wausau, Wisconsin 54401.

## II.    JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 as the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000.00.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in Pulaski County, Arkansas, and the property that is the subject of the claim is situated in Pulaski County, Arkansas. *See also* ARK. CODE ANN. § 23–79–204 (suit shall be brought in the county in which the loss occurred).

## III.    FACTS

7.    Welspun manufactures spiral pipes at its facility (the "Facility") located at 9301 Frazier Pike in Little Rock, Arkansas.

8.    Liberty Mutual issued a RM Select Policy (the "Policy"), number YU2–L9L–453570–011, to Welspun for, *inter alia*, the Facility.  The Policy's period ran from December 31, 2011, to December 31, 2012.  A copy of the Policy is attached hereto and incorporated herein as Exhibit 1.[1]

9.    The Policy identifies Welspun as the named insured under the Policy. *See* Policy at 11.

10.    The Policy provides coverage for fire damage. *Id.*

11.    The Policy also provides coverage for loss of business income resulting from a fire. *Id.* at 17.

12.    The Policy provides blanket "loss of business income" coverage.  Section C of the Policy states that a covered loss of business income includes:

---

[1] Welspun has consecutively repaginated the Policy for the convenience of the Court and the parties.

290500

(1)  The actual loss of **business income you** incur during a **period of restoration**[2] directly resulting from damage by a **peril insured against** to the type of property covered by the policy at a **covered location**.

(2)  The necessary expenses **you** incur in excess of **your** normal operating expenses that reduces **your** loss of **business income**. . .

*Id.* at 17.[3]

13.  The Policy further requires that Welspun mitigate its loss of business income, by:

a.  Making up lost production within a reasonable period of time not limited to the **period of restoration**.
b.  Continuing business operations or services during the **period of restoration**.
c.  Using any property or service:
    (1)  owned or controlled by **you**; or
    (2)  obtainable from any other sources
         ****

**We** will not pay for any loss to the extent it can be reduced through these or any other means whether at a **covered location** or any other location.

*Id.* at 18.

14.  The Policy also provides coverage for "extra expense." The Policy defines extra expenses as the reasonable and necessary extra costs:

1.  Incurred to temporarily continue as nearly normal as practicable the conduct of **your** business; or
2.  Of temporarily using property or facilities of **yours** or others.
3.  For purposes of applying the above provision "normal" means the condition that would have existed had no **covered loss** happened.

*Id.* at 47.

15.  The Policy provides up to $68,128,941 in blanket loss of income coverage. *See* Policy at 15.

---

[2] "Period of restoration" is defined in the Policy for buildings and equipment as the period of time that starts at the time of the covered loss and ends "when using reasonable speed the building and equipment could be (1) repaired and replaced; and (2) made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage." The Policy also provided for an extension of coverage, called the "extended period of restoration," that provides loss of business income coverage for the additional time required, when Welspun uses reasonable speed, to restore Welspun's business to the condition it would have been in if no loss had occurred. The extended period of restoration starts at the end of the "period of restoration" and continues for no more than 60 consecutive days thereafter.
[3] Bolded terms are terms that are defined in the Policy.

290500

16.     The Policy provides up to $1,000,000 in blanket extra expense coverage. *Id.*

17.     On July 14, 2012, a fire occurred in the control panel room of the Facility.

18.     The control panel room was nearly a complete loss. The control panel room regulated several processes vital to pipe production. As a result of the fire, the Facility was closed, and Welspun temporarily had to cease its pipe production at the Facility.

19.     At the time of the fire, Welspun was obligated to fulfill certain orders, including for its customers Access NEX ("Access") and Seaway. Welspun was required to deliver the ordered product by specific dates.

20.     As a result of the fire, Welspun attempted unsuccessfully to renegotiate the Access and Seaway completion deadlines of March 2013 and August 2013, respectively.

21.     The Seaway contract was particularly problematic. On May 25, 2012, Seaway confirmed an order with Welspun for 180,525 metric tons of pipe to be produced at the Facility.[4] The order mandated delivery of the pipe on a rolling basis and that the final delivery be completed by August 31, 2013.

22.     Welspun planned to produce some of Seaway's May 25, 2012, order during the time period that the Facility was closed.[5]

23.     After the fire, Welspun notified Seaway that it would be unable to meet the August 31, 2013, delivery deadline. Seaway advised Welspun that a later delivery date was unacceptable and that it was unwilling to change the original delivery date. Welspun believed

---

[4] In addition to the 180,525 metric tons of pipe to be produced at the Facility, Seaway designated an additional 36,592 metric tons of pipe to be produced in India. These pipes required a specific type of manufacturing not available at the Facility. These L-Saw pipes produced in India are different from, and not to be confused with, the 39,957 metric tons shifted to India to mitigate Welspun's losses from the fire that are at issue here. Welspun made no claim against Liberty with respect to the L-Saw pipes.

[5] There were later periods of production scheduled as well.

290500

that Seaway would not go forward with the contract if Welspun could not meet the original delivery date.

24.     To mitigate the loss of the entire Seaway contract, Welspun contacted its sister company, Welspun Tradings Ltd. ("Welspun Tradings"), in India and requested that it manufacture a portion of the pipes (39,957 metric tons) for Seaway.  Welspun Tradings agreed to do so provided that Welspun pay it for any incremental costs involved.  On or about August 7, 2012, Welspun and Welspun Tradings agreed that Welspun would pay those incremental costs.

25.     Welspun gave Seaway the option to contract directly with Welspun Tradings for the 39,957 metric tons, or to subcontract for the 39,957 metric tons through Welspun.  Seaway chose to contract directly with Welspun Tradings.

26.     As a result, Welspun Tradings and Seaway entered into a formal contract whereby 39,957 metric tons of Seaway's 180,525 metric ton order would be produced by Welspun Tradings in India (the "Indian Pipes").  The Indian Pipes represented the quantity of the order that Welspun anticipated it could not, as a result of the fire, produce by Seaway's delivery deadline.

27.     As a part of Welspun's agreement with Welspun Tradings, Welspun was obligated to pay for the incremental costs of, *inter alia*, steel, shipping, alterations to the pipes to bring them within the contract's specifications,[6] and other additional production expenses.  These incremental costs totaled $14,758,570 (the "Mitigation Cost").  The Mitigation Cost was a necessary expense in excess of Welspun's normal operating expenses and was incurred to reduce Welspun's loss of business income.

---

[6] The Seaway contract required 80–foot coated pipes.  The Indian facility, however, could only produce 40–foot pipes.  As a result, the Indian Pipes were shipped from India to Welspun's facility in Little Rock and double joined there.  In addition, the Indian Pipes had to be coated at the Little Rock facility because the transatlantic shipment would have damaged the pipes' coating.

290500

28.     In late August of 2012, Welspun and Seaway signed a written contract for 140,568 metric tons of pipe, which represented the remainder of Seaway's 180,525 metric ton order.

29.     As a result of the agreement with Welspun Tradings, Welspun was able to go forward with and fulfill its obligations under the Seaway contract and fulfill its obligations under the Access contract.

30.     At the time of making the arrangements with Seaway to fulfill the Seaway contract, Welspun did not know how long it would take for the Facility to become operational again. Welspun had ordered new equipment for the control panel room, but most of it had to be custom-built, and there was significant concern that it would not arrive on schedule. Welspun hoped to start production again in late September of 2012, but that date was extremely uncertain through the summer of 2012.

31.     On September 25, 2012, Welspun was able to start test runs of its pipe production equipment. Thereafter, Welspun manufactured some pipes for Seaway and, in addition, was able to start on its requirements for Access. Welspun was able to complete Access' order on time.

32.     In addition to the Mitigation Cost, Welspun also incurred $586,568 in costs for the building of a pad for storage purposes and $200,000 in mobilization/demobilization costs, totaling $15,545,138. Liberty Mutual claims that this amount is compensable under the Policy solely as an extra expense.

33.     Welspun submitted its claim to Liberty Mutual for the Mitigation Cost [7] (the necessary expenses it incurred to reduce its loss of business income, *i.e.*, the amount of money it was required to expend in order to avoid the loss of the Seaway contract).

---

[7] As a part of its claim, Welspun submitted various other losses it incurred as a result of the fire, but the parties are in agreement as to these other losses, and thus they are not relevant here.

290500

34.     Liberty Mutual claimed that the Mitigation Cost did not constitute a loss of business income, but instead was an "extra expense" under the Policy.  *See* Policy at 47.  Liberty Mutual paid Welspun up to the "extra expense" cap of $1,000,000 for the Mitigation Cost and the other necessary expenses, leaving a remaining amount of $14,545,138 (the "Disputed Amount").[8]  *Id.* at 15.

35.     Liberty Mutual refuses to pay the Disputed Amount on the basis that the maximum coverage for extra expense under the Policy is $1,000,000.

## COUNT I – BREACH OF THE POLICY

36.     Welspun incorporates by reference the allegations contained in paragraphs 1–35 above.

37.     Welspun and Liberty Mutual entered into a contract, the Policy.

38.     The Policy required Liberty Mutual to pay for loss of business income of up to $68,128,941.

39.     The Policy was effective until December 31, 2012.

40.      The July 14, 2012, fire was a covered loss insured by the Policy.

41.     Welspun's Mitigation Costs of $14,545,138 for the costs of transferring the production of approximately 40,000 metric tons of pipe to India is compensable under the Policy pursuant to its loss of business income provision because these expenses were the necessary expenses it incurred in excess of its normal operating expenses that reduced its loss of business income in accordance with Section C(2) of the Policy.

42.     Welspun performed its obligations under the Policy.

43.     Welspun submitted its claim for the Disputed Amount.

---

[8] The parties agreed that acceptance of the $1,000,000 payment was not a waiver of Welspun's claim for the Disputed Amount.

290500

44.     On June 24, 2013, Liberty Mutual gave Welspun formal notice of its intent not to pay the claim.

45.     Liberty Mutual's failure to pay the Disputed Amount constitutes a breach of its obligations under the Policy.

46.     As a direct and foreseeable result of Liberty Mutual's breach, Welspun has incurred damages in the amount of $14,545,138, plus attorneys' fees and costs, in bringing this action.

## COUNT II– FAILURE TO HONOR POLICY

47.     Welspun incorporates by reference the allegations contained in paragraphs 1–46.

48.     Liberty Mutual has failed to honor its contractual obligation under the Policy.

49.     Welspun is entitled to a 12% penalty and attorneys fees pursuant to ARK. CODE ANN. § 23–79–208.

## COUNT III- DECLARATORY JUDGMENT

50.     Welspun incorporates by reference the allegations contained in paragraphs 1–49.

51.     Welspun and Liberty Mutual entered into a contract, the Policy.

52.     The Policy requires that Liberty Mutual pay for loss of business income of up to $68,128,941.

53.     The Policy requires that Welspun mitigate the loss of its business income.

54.     The Policy requires that Welspun mitigate the loss of its business income during and subsequent to the period of restoration and the extended period of restoration.

55.     The Mitigation Cost is compensable under the Policy as a loss of business income.

56.     The Mitigation cost is not an "extra expense" under the Policy.

290500

57.     As a result of the agreement with Welspun Tradings, Welspun incurred the Mitigation Cost in the amount of $14,545,138.

58.     Liberty Mutual's failure to pay the Mitigation Cost constitutes a breach of its obligations under the Policy.

59.     Plaintiff therefore seeks a declaratory judgment that:

a.     Pursuant to the Policy, Welspun was required to mitigate its loss of business income;

b.     The Policy requires that Welspun mitigate the loss of its business income during and subsequent to the period of restoration and the extended period of restoration;

c.     The Mitigation Cost was a necessary expense that Welspun incurred in excess of its normal operating expenses that reduced its loss of business income;

d.     Under the Policy, the Mitigation Cost does not constitute an "extra expense";

e.     Welspun's Mitigation Cost in the amount of $14,545,138, is compensable under the Policy under the Policy's loss of business income coverage.

**WHEREFORE,** Welspun respectfully requests that this Court award it judgment in the amount of $14,545,138, that it be awarded a 12% penalty and attorneys' fees and costs, and that this Court issue a declaration as specified in paragraph 59 above, and for all other just and proper relief.

290500

ROSE LAW FIRM,
A Professional Association
120 East Fourth Street
Little Rock, Arkansas  72201–2893
(501) 375–9131
(501) 375-1309 (fax)
kperkins@roselawfirm.com
astewart@roselawfirm.com
breynolds@roselawfirm.com

By: _____
    Kathryn Bennett Perkins, Ark. Bar No. 92231
    Amy Lee Stewart, Ark. Bar No. 88167
    Bourgon B. Reynolds, Ark. Bar No. 2012290

*Attorneys for Plaintiff*

290500



## Liberty Mutual Fire Insurance Company

### (A Stock Company herein called the Company)

While this policy is in effect, **you** are a member of Liberty Mutual Holding Company Inc. and are entitled to vote either in person or by proxy at any and all meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

**You** shall participate in the distribution of surplus funds of the company through any dividends that may be declared for this Policy. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

This policy is classified for dividend purposes in DIVIDEND CLASS I - Fire and Allied Lines.

This policy is not assessable.

In witness whereof, the company has caused this policy to be signed by its President and its Secretary in Boston, Massachusetts and countersigned on the DECLARATIONS, Form RM1000, by a duly authorized representative of the company.

SECRETARY

PRESIDENT

**EXHIBIT**

**1**

RM0001 02-11

Page  1  of  2

**Policy 01**



**Liberty Mutual Fire Insurance Company**

Notice of Membership in Liberty Mutual Holding Company Inc. and
Notice of Annual Meeting

**Your** policy includes a statement regarding membership rights in Liberty Mutual Holding Company Inc.
Liberty Mutual Fire Insurance Company is a stock insurance company subsidiary of Liberty Mutual
Holding Company Inc.  Insurance is provided by Liberty Mutual Fire Insurance Company.  **You** are a
member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., **you** are entitled to vote either in person or by proxy
at the annual meeting of said company.  The Annual Meeting of Liberty Mutual Holding Company Inc. is in
Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial
statements, which are posted on Liberty Mutual's website at www.libertymutual.com, by writing to Liberty
Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02117.

RM0001 02-11

Page  2  of  2

**Policy 02**


Liberty Mutual.

## RM SELECT™ POLICY

## POLICY REFERENCE INDEX

This INDEX is to help **you** read **your** Policy.  It is not a part of the Policy and is in no way a substitute for reading **your** entire Policy.

**Your** Policy may or may not include all of the forms, endorsements, coverages and provisions listed in this INDEX.  Refer to the POLICY INDEX, Form RM0003, for a list of forms and endorsements that are included on **your** policy.

PLEASE READ **YOUR** POLICY CAREFULLY!

|  | Form Number | Beginning on Page |
|---|---|---|
| **SIGNATURE PAGE** | RM0001 | |
| **POLICY INDEX** | RM0003 | |
| **STATE OR MUNICIPAL TAXES, SURCHARGE AND OTHER MISCELLANEOUS CHARGES SUMMARY** | RM0005 | |
| **DECLARATIONS** | RM1000 | |
| Named Insured and Mailing Address | | 1 |
| **Policy Period** | | 1 |
| Policy Premium | | 1 |
| A.  Insuring Agreement | | 2 |
| B.  Coverages | | 2 |
| C.  **Limits of Liability** | | 2 |
| D.  Standard Extensions of Coverage | | 2 |
| E.  Optional Extensions of Coverage – Sublimits of Liability | | 2 |
| F.  Equipment Breakdown Coverage | | 3 |
| G.  Deductible and waiting periods | | 4 |
| Schedule | | 5 |
| **COVERAGES** | RM1001 | |
| A.  **Real Property** | | 1 |
| B.  **Personal Property** | | 1 |

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

**Policy 03**

**POLICY REFERENCE INDEX – (CONTINUED)**

|  | **Form Number** | **Beginning on Page** |
|---|---|---|
| **COVERAGES – (CONTINUED)** | RM1001 | |
|    C.  Loss of **Business Income** | | 1 |
|    D.  **Extra Expense** | | 3 |
|    E.  Equipment Breakdown | | 4 |
| **EXTENSIONS OF COVERAGE** | RM1002 | |
|    A.  Standard Extensions of Coverage | | 1 |
|       1.  Accounts Receivable | | 1 |
|       2.  Arson Reward | | 2 |
|       3.  Computer Virus and Denial of Access | | 2 |
|       4.  Debris Removal Expense | | 3 |
|       5.  Deferred Payments | | 3 |
|       6.  Duty to Defend | | 3 |
|       7.  Extended **Period of Restoration** | | 4 |
|       8.  Fire Department Charges | | 4 |
|       9.  **Fine Arts** | | 4 |
|      10.  **Fungus** Cleanup Expense | | 4 |
|      11.  Installation of **Personal Property** or **Personal Property of Others** | | 5 |
|      12.  Lock and Key Replacement | | 5 |
|      13.  **Personal Property** of Employees | | 5 |
|      14.  Plants, Trees or Shrubs | | 5 |
|      15.  **Pollution** Cleanup Expense | | 5 |
|      16.  Professional Fees | | 6 |
|      17.  Removal | | 6 |
|    B.  Optional Extensions of Coverage | | 6 |
|       1.  Course of Construction | | 6 |
|       2.  Errors and Omissions | | 7 |
|       3.  Exhibitions, Expositions, Fairs or Trade Shows | | 7 |
|       4.  **Miscellaneous Locations** | | 7 |
|       5.  **New Locations** | | 7 |
|       6.  Demolition Cost, Increased Construction Cost and Operation of Building Laws | | 8 |
|       7.  Salespeople | | 8 |
|       8.  **Transit** | | 9 |
|       9.  **Unscheduled Locations** | | 9 |
| **EXCLUSIONS** | RM1003 | |
|    A.  **GROUP A EXCLUSIONS** | | 1 |
|    B.  **GROUP B EXCLUSIONS** | | 3 |
| **PROPERTY NOT COVERED** | RM1004 | |
| **VALUATIONS** | RM1005 | |
|    A.  **Replacement Cost** | | 1 |

**Policy 04**

## POLICY REFERENCE INDEX – (CONTINUED)

| | Form Number | Beginning on Page |
|---|---|---|
| **VALUATIONS – (CONTINUED)** | RM1005 | |
| **B.** Actual Cash Value | | 1 |
| **C.** Other Valuations | | 2 |
| **CONDITIONS** | RM1006 | |
| **A.** Abandonment of Property | | 1 |
| **B.** Appraisal | | 1 |
| **C.** Assignment | | 1 |
| **D.** Brands and Labels | | 1 |
| **E.** Breach of Condition | | 1 |
| **F.** Cancellation | | 1 |
| **G.** Change of Terms | | 2 |
| **H.** Collection from Others | | 3 |
| **I.** Concealment, Misrepresentation or Fraud | | 3 |
| **J.** Inspection | | 3 |
| **K.** Liberalization | | 3 |
| **L.** Loss Payee | | 3 |
| **M.** Mortgage Holders | | 4 |
| **N.** No Benefit to Bailee | | 4 |
| **O.** No Reduction by Loss | | 4 |
| **P.** Nonrenewal | | 4 |
| **Q.** Other Insurance | | 5 |
| **R.** Our Options | | 5 |
| **S.** Pair, Set or Parts | | 5 |
| **T.** Payment of Loss | | 5 |
| **U.** Policy Period and Territory | | 6 |
| **V.** Recovered Property | | 6 |
| **W.** Right to Adjust with Owner | | 6 |

RM0002 02-11

Page  3  of  6

**Policy 05**

**POLICY REFERENCE INDEX – (CONTINUED)**

| | | Form Number | Beginning on Page |
|---|---|---|---|
| **CONDITIONS – (CONTINUED)** | | RM1006 | |
| X. | Subrogation | | 6 |
| Y. | Suit | | 6 |
| Z. | Suspension | | 7 |
| A.A. | Titles of Paragraphs | | 7 |
| B.B. | Vacancy | | 7 |
| C.C. | **Your** Duties After a Loss | | 8 |
| **DEFINITIONS** | | RM1007 | |
| A. | **Accident** | | 1 |
| B. | **Actual cash value** | | 1 |
| C. | **Average daily value (ADV)** | | 1 |
| D. | **Business income** | | 1 |
| E. | **Covered location(s)** | | 2 |
| F. | **Covered loss** | | 2 |
| G. | **Covered property** | | 2 |
| H. | **Data** | | 2 |
| I. | **Data processing equipment** | | 2 |
| J. | **Earth movement** | | 2 |
| K. | **Effective date** | | 2 |
| L. | **Extra expense** | | 2 |
| M. | **Fine arts** | | 2 |
| N. | **First tier wind Counties and Parishes** | | 2 |
| O. | **Flood** | | 3 |
| P. | **Fungus** | | 3 |
| Q. | **Hail** | | 3 |
| R. | **Limit(s) of liability** | | 3 |
| S. | **Media** | | 3 |

**Policy 06**

**POLICY REFERENCE INDEX – (CONTINUED)**

|  | Form Number | Beginning on Page |
|---|---|---|
| **DEFINITIONS – (CONTINUED)** | RM1007 | |
| T.   Miscellaneous location(s) | | 3 |
| U.   Mobile equipment or tools | | 4 |
| V.   Named Storm | | 4 |
| W.  New location(s) | | 4 |
| X.   New Madrid | | 4 |
| Y.   Object(s) | | 4 |
| Z.   Occurrence | | 5 |
| A.A.  Perils insured against | | 5 |
| B.B.  Period of restoration | | 5 |
| C.C.  Perishable goods | | 6 |
| D.D.  Personal property | | 6 |
| E.E.  Personal property of others | | 6 |
| F.F.  Policy period | | 7 |
| G.G.  Pollutant(s) | | 7 |
| H.H.  Pollution | | 7 |
| I.I.   Puget Sound | | 7 |
| J.J.   Real property | | 7 |
| K.K.  Replacement cost | | 7 |
| L.L.  Second tier wind Counties and Parishes | | 7 |
| M.M. Sinkhole collapse | | 7 |
| N.N.  Software | | 8 |
| O.O.  Specified perils | | 8 |
| P.P.  Transit | | 8 |
| Q.Q.  Unscheduled location(s) | | 8 |
| R.R.  Valuable papers and records | | 8 |
| S.S.  Volcanic activity | | 9 |
| T.T.  We, us and our(s) | | 9 |
| U.U.  Wind | | 9 |
| V.V.  You and your(s) | | 9 |

**Policy 07**

**POLICY REFERENCE INDEX – (CONTINUED)**

|  | Form Number | Beginning on Page |
|---|---|---|

**ENDORSEMENTS**

See POLICY INDEX

Policy Number YU2-L9L-453570-011

## RM SELECT™ POLICY

## POLICY INDEX

| TITLE | FORM NO. | EDITION DATE |
|-------|----------|--------------|
| SIGNATURE PAGE | RM0001 | 02-11 |
| POLICY REFERENCE INDEX | RM0002 | 02-11 |
| POLICY INDEX | RM0003 | 02-11 |
| PRODUCER OF RECORD INFORMATION | EN4008 | 01-11 |
| DECLARATIONS | RM1000 | 02-11 |
| COVERAGES | RM1001 | 09-08 |
| EXTENSIONS OF COVERAGES | RM1002 | 02-11 |
| EXCLUSIONS | RM1003 | 02-11 |
| PROPERTY NOT COVERED | RM1004 | 02-11 |
| VALUATIONS | RM1005 | 02-11 |
| CONDITIONS | RM1006 | 02-11 |
| DEFINITIONS | RM1007 | 02-11 |
| ADDITIONAL NAMED INSURED | RM1100 | 01-04 |
| SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES | RM1102 | 03-08 |
| MOBILE EQUIPMENT OR TOOLS EXTENSION | RM1104 | 03-08 |
| EARTH MOVEMENT COVERAGE | RM1106 | 03-08 |
| FLOOD COVERAGE | RM1108 | 03-08 |
| INTERRUPTION OF SERVICES COVERAGE EXTENSION | RM1110 | 02-11 |
| PAYROLL EXPENSE LIMITATION OR EXCLUSION | RM1113 | 02-11 |
| ADDITIONAL DEDUCTIBLES AND WAITING PERIODS | RM1115 | 02-11 |
| STANDARD EXTENSIONS AMENDATORY | RM1119 | 03-08 |
| CAP ON LOSSES FROM CERTIFIED ACT(S) OF TERRORISM | RM1144R1 | 03-08 |
| EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE | RM1250 | 03-08 |
| ADDITIONAL TYPES OF PROPERTY NOT COVERED AMENDATORY | RM1728 | 09-08 |
| ARKANSAS CHANGES | RM1803 | 03-08 |
| TEXAS CHANGES | RM1842 | 03-11 |
| TEXAS - EQUIPMENT BREAKDOWN AMENDATORY | RM1870 | 03-08 |
| ARKANSAS CHANGES - CANCELLATION AND NONRENEWAL | RM1903 | 03-08 |
| ARKANSAS NOTICE TO POLICYHOLDERS | EN4003 | 01-10 |
| DISCLOSURE - TERRORISM RISK INSURANCE ACT | EN9052 | 03-08 |

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM0003 02-11

**Policy 09**

Policy number YU2-L9L-453570-011

## Important Notice

## PRODUCER OF RECORD INFORMATION

This policy has been issued by **us** to **you** through the following producer of record:

Name and Address of Producer of Record

MEADORS ADAMS & LEE INC
101 S SPRING ST STE 400
PO BOX 3456
Little Rock, AR 72203

EN4008 01-11                                                    Page  1  of  1

**Policy 10**



**Liberty Mutual Group**
175 Berkeley Street  Boston, MA 02117

# RM SELECT™ POLICY

## DECLARATIONS

Policy number YU2-L9L-453570-011

Named Insured and Mailing Address

Welspun Pipes, Inc.

9301 Frazier Pike
Little Rock  AR  72206-9280

Form of Business Corporation

Premium Will Be Billed Monthly

**Policy Period**: 12/31/2011 to 12/31/2012 at 12:01 A.M. standard time at above mailing address.

In return for the payment of the premium, and subject to all the terms of this policy, **we** agree with **you** to provide the insurance as stated in this policy.

| | |
|---|---|
| Premium (Excluding premium for "certified act(s) of terrorism" under the Terrorism Risk Insurance Act (TRIA), as amended): | $180,334 |
| Premium for "certified act(s) of terrorism" under the Terrorism Risk Insurance Act (TRIA), as amended: | $1,147 |
| State or Municipal Taxes, Surcharges and Other Miscellaneous Charges: (See State or Municipal Taxes, Surcharges and Other Miscellaneous Charges Summary, Form RM0005, for breakdown) | $0 |
| Total Premium/Other Charges for Above **Policy Period**: | $181,481 |
| The Deposit Premium/Other Charges is: | $72,592 |

Issued By: Liberty Mutual Fire Insurance Company

By:

_____
Authorized Company Representative OR Countersignature (as required)

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

**Policy 11**

## DECLARATIONS (Continued)

**A.**  Insuring Agreement

Subject to all the terms and conditions of this policy, **we** will pay for risks of direct physical loss or damage to **covered property** as a result of an **occurrence**, unless excluded.

If this policy provides Equipment Breakdown coverage then subject to all the terms and conditions of this policy **we** will pay for direct physical loss or damage to **covered property** as a result of an **accident** to an **object**, unless excluded.

This policy consists of the forms and endorsements shown on the POLICY INDEX, Form RM0003, and any endorsements attached to the policy.  Insurance is provided at those locations and for those coverages and **limits of liability** shown on the Schedule of this form.  Extensions of coverage, sublimits of liability and deductibles are listed on this form. Endorsements may contain separate terms, conditions, deductibles and limits or sublimits of liability.

Words in **bold faced type** have special meanings in this policy.  They are defined in DEFINITIONS, Form RM1007.  These definitions apply to this entire policy, and to any endorsements to it.  Definitions that apply to individual forms or endorsements will be italicized and noted in those forms or endorsements.  The names of forms are capitalized (for example, DECLARATIONS).

**B.**  Coverages

**We** provide the following coverages if they are marked with an "X".  Coverages are provided in accordance with the terms of this policy.  Terms that apply only to individual coverage forms are set forth in those forms.  This policy provides coverage on a replacement cost basis for **real property, personal property, personal property of others** and equipment breakdown except as indicated on VALUATIONS, Form RM1005, or any other forms or endorsements attached to this policy.

(X) **Real Property**
(X) **Personal Property**, including **personal property of others**
(X) Equipment Breakdown
(X) Loss of **Business Income**
    ( ) **Real Property** or **Personal Property** only
    ( ) Equipment Breakdown only
    (X) **Real Property** or **Personal Property** and Equipment Breakdown
(X) **Extra Expense**
    ( ) **Real Property** or **Personal Property** only
    ( ) Equipment Breakdown only
    (X) **Real Property** or **Personal Property** and Equipment Breakdown

**C.**  Limits of Liability

**We** will not pay more than the applicable **limit of liability** shown on the Schedule of this form for any one (1) **occurrence** or any one (1) **accident** covered by this policy, nor will **we** pay for more than **your** interest in the lost or damaged property.

**D.**  Standard Extensions of Coverage

Refer to **A.** of EXTENSIONS OF COVERAGE, Form RM1002, for the standard extensions of coverage, including sublimits of liability, provided by this policy.

**E.**  Optional Extensions of Coverage – Sublimits of Liability

    **1.**  The sublimits of liability shown in **E. 4.** below apply to the Optional Extensions of Coverage defined in **B.** of EXTENSIONS OF COVERAGE, Form RM1002.  If no sublimit is shown, no coverage is provided.

    **2.**  If a sublimit is shown in **E. 4.** below for **miscellaneous locations**, **new locations** and **unscheduled locations**, coverage may be limited or excluded elsewhere in this policy or its endorsements.

## DECLARATIONS (Continued)

3. These sublimits are the most **we** will pay for any loss covered by these Optional Extensions of Coverage. For **miscellaneous locations**, **new locations** and **unscheduled locations**, the most **we** will pay for any loss or damage will be the lesser of:

   a. The sublimit shown below for **miscellaneous locations**, **new locations** or **unscheduled locations**; or

   b. The sublimit shown on any individual coverage form or endorsement.

4. Optional Extensions of Coverage:

   a. $No Coverage          Course of Construction;

   b. $5,000,000          Demolition Cost;

   c. $Included in 4b.      Increased Construction Cost;

   d. $Included in 4b.      Operation of Building Laws;

   e. $500,000          Errors and Omissions;

   f. $No Coverage          Exhibitions, Expositions, Fairs or Trade Shows;

   g. $250,000          at each **miscellaneous location**;

   h. $1,000,000          at each **new location**, for up to 90 days from the date such **new location(s)** is first purchased or rented, whichever is earlier;

   i. $No Coverage          on covered **personal property** in the custody of salespeople;

   j. $1,000,000          **Transit**;

   k. $No Coverage          at each **unscheduled location**.

F. Equipment Breakdown Coverage

   1. Equipment Breakdown **limit of liability**

      If marked with an "X" the following **limits of liability** apply:

      (X) See the Schedule of this form;

      ( ) See Form Not Applicable; or

      ( ) **Limit(s) of liability** shown below are separate from any other applicable **limit of liability** or any sublimit of liability of this policy.

      $Not Applicable      Damage to covered **object(s)**, loss of **business income**, and **extra expense**;

      $Not Applicable      Damage to covered **object(s)** and loss of **business income**;

      $Not Applicable      Damage to covered **object(s)** and **extra expense**;

      $Not Applicable      Damage to covered **object(s)**;

      $Not Applicable      Loss of **business income** and **extra expense**;

      $Not Applicable      Loss of **business income**;

      $Not Applicable      **Extra expense**.

**Policy 13**

## DECLARATIONS (Continued)

    **2.**  For equipment breakdown extensions of coverage see EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE, Form RM1250.

**G.**  Deductible and waiting periods, except as indicated on any other forms or endorsements attached to this policy.

    **1.**  $10,000.  Unless marked with an "X" in **G. 2.**, or as provided in **G. 3.** below, **we** will not pay unless a **covered loss** from any one (1) **occurrence** exceeds the amount shown.

    **2.**  (X)  See ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

    **3.**  Equipment breakdown deductibles or waiting periods will be applied as specified below:

        **a.**  If **you** have a combined deductible, **we** will not pay unless a covered equipment breakdown loss from any one (1) **accident** is more than:

| | |
|---|---|
| $Not Applicable | for loss to covered **object(s)**, loss of **business income**, and **extra expense**; |
| $Not Applicable | for loss to covered **object(s)** and loss of **business income**; |
| $Not Applicable | for loss to covered **object(s)** and **extra expense** |

        **b.**  If one (1) or more deductible amounts are shown below, each will be applied separately.

| | |
|---|---|
| $See Form RM1115 | Covered **object(s)**. |
| $Not Applicable | Loss of **business income** and **extra expense**. |
| $Not Applicable | Loss of **business income**. |
| $Not Applicable | **Extra expense**. |
| See Form RM1115 | times the **average daily value** of loss of **business income** or **extra expense** during the **period of restoration**. |
| Not Applicable | hours immediately following the **accident** for loss of **business income** or **extra expense**. |

        **c.**  **We** will not pay for loss of **business income**, **extra expense**, or, to the extent **perishable goods** coverage is provided in EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE, Form RM1250, unless a covered equipment breakdown loss from any one (1) **accident** to an **object** exceeds a waiting period of Not Applicable hours.

        Once the waiting period has been exceeded coverage will begin at the initial time of the interruption, and will be subject to the deductibles shown in **G. 3.**

        **d.**  (X)  See ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

Once a deductible or waiting period is exceeded, **we** will then pay for the excess, up to the applicable **limit of liability**.

If a **covered loss**, involves two (2) or more deductibles, **we** will use no more than the largest of the applicable deductibles except as provided in **G. 3. b.** or the ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

**Policy 14**

## DECLARATIONS (Continued)

Schedule

| No. | Location or Sub-location | Coverage | Limit of Liability |
|---|---|---|---|
| | All covered locations as per Statement of Values on file with **us**, except as scheduled below.  Insurance does not apply at locations and/or coverages at locations unless a specific value is provided by **you**. | Blanket **Real Property** | $59,592,139* |
| | | Blanket **Personal Property** | $105,996,884* |
| | | Blanket Loss of **Business Income** | $68,128,941* |
| | | Blanket **Extra Expense** | $1,000,000* |

*Limits include Equipment Breakdown

**Policy 15**

## DECLARATIONS (Continued)

List of Locations:

| Loc # | Address | City | State | Zip | Country |
|---|---|---|---|---|---|
| 1.1 | 9301 Frazier Pike<br>Spiral Steel Paint | Little Rock | AR | 72206 | |
| 1.2 | 9301 Frazier Pike<br>Double Jointing Bldg | Little Rock | AR | 72206 | |
| 1.3 | 9301 Frazier Pike<br>Coating Bldg | Little Rock | AR | 72206 | |
| 1.4 | 9301 Frazier Pike<br>Compressor Building | Little Rock | AR | 72206 | |
| 1.5 | 9301 Frazier Pike<br>Storage Bldg | Little Rock | AR | 72206 | |
| 1.6 | 9301 Frazier Pike<br>New Office Bldg #1 | Little Rock | AR | 72206 | |
| 1.7 | 9301 Frazier Pike<br>New Office Bldg #2 | Little Rock | AR | 72206 | |
| 1.8 | 9301 Frazier Pike<br>Temple Building | Little Rock | AR | 72206 | |
| 1.9 | 9301 Frazier Pike<br>Annex Bldg | Little Rock | AR | 72206 | |
| 1.10 | 9301 Frazier Pike<br>Trailer Building | Little Rock | AR | 72206 | |
| 2 | 9601 Frazier Pike | Little Rock | AR | 72206 | |
| 3 | 8200 Frazier Pike | Little Rock | AR | 72206 | |
| 4 | 15721 Park Row Ste 230 | Houston | TX | 77084 | |

**Policy 16**

# COVERAGES

**A.** If coverage for **real property** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, **we** will pay for a **covered loss** to **your real property** at or within one-thousand (1,000) feet of a **covered location**.

**B.** If coverage for **personal property** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, **we** will pay for a **covered loss** to **your personal property**, including **personal property of others** and **valuable papers and records**, at or within one-thousand (1,000) feet of a **covered location**.

**C.** If coverage for loss of **business income** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, **we** will pay for:

    **1.** The actual loss of **business income you** incur during a **period of restoration** directly resulting from damage by a **peril insured against** to the type of property covered by this policy at a **covered location**.

    **2.** The necessary expenses **you** incur in excess of **your** normal operating expenses that reduces **your** loss of **business income**. **We** will not pay more than **we** would pay if **you** had been unable to make up lost production or continue operations or services.

    **3.** The actual loss of **business income you** incur if **you** are denied access to a **covered location** by order of civil or military authority if:

        **a.** the order results from a **covered loss**; or

        **b.** the order results from damage by a **peril insured against** to the type of property covered by this policy within one (1) statute mile of a **covered location**.

    This coverage will apply for a period not to exceed twenty-one (21) consecutive days from the date of the order.

    **4.** The actual loss of **business income you** incur if **your** ingress to or egress from a **covered location** is prevented as the direct result of a **peril insured against** to the type of property covered by this policy within one (1) statute mile of a **covered location**.

    This coverage will apply for a period not to exceed twenty-one (21) consecutive days from the date **your** ingress or egress is first prevented.

    **5.** In determining the actual loss of **business income**, consideration must be given to:

        **a.** The experience of the business before the loss and the probable experience after the loss;

        **b.** The continuation of only those normal charges and expenses that would have been incurred had no interruption of production or suspension of business operations or services happened;

        **c.** The demonstration of an actual loss of sales, income, or rental income; and

        **d.** Any amount recovered, at selling price, for loss or damage to merchandise that will be considered to have been sold.

    **6.** **We** will not pay unless **you** are wholly or partially prevented from:

        **a.** producing goods; or

        **b.** continuing business operations or services.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

**Policy 17**

## COVERAGES (Continued)

7. **You** are required to mitigate **your** loss by:

   a. Making up lost production within a reasonable period of time not limited to the **period of restoration**.

   b. Continuing business operations or services during the **period of restoration**.

   c. Using any property or service:

      (1) owned or controlled by **you**; or

      (2) obtainable from any other sources.

   d. Working extra time or overtime.

   e. Using inventory.

   **We** will not pay for any loss to the extent it can be reduced through these or any other means whether at a **covered location** or any other location.

8. **We** will not pay for:

   a. Any loss during any idle period. Idle period includes, but is not limited to, any period when production, operation or service would cease or be prevented due to:

      (1) physical damage not insured under this policy on or away from the **covered location**;

      (2) planned or rescheduled shutdown or maintenance;

      (3) strikes or other work stoppage; or

      (4) any reason other than a **covered loss**.

   b. Any increase in loss due to:

      (1) suspension, cancellation or lapse of any lease, contract, license or order.

      (2) fines or damage for breach of contract for late or non-completion of orders, or for penalties of any nature.

   c. Any consequential, indirect or remote loss.

   d. Any loss resulting from damage to:

      (1) finished goods manufactured by **you**, nor for the time required for their reproduction.

      (2) property in **transit**.

   e. Any loss or expense recoverable elsewhere in this policy.

9. The most **we** will pay for a loss under this coverage is the lesser of:

   a. **Your** actual loss of **business income** and necessary expense; or

   b. The applicable **limit of liability** shown on the Schedule of the DECLARATIONS, Form RM1000, or any endorsements to this policy.

RM1001 09-08

**Policy 18**

## COVERAGES (Continued)

**D.** If coverage for **extra expense** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, **we** will pay for:

    **1.** The actual **extra expense you** incur during a **period of restoration** directly resulting from damage by a **peril insured against** to the type of property covered by this policy at a **covered location**.

    **2.** The actual **extra expense you** incur if **you** are denied access to a **covered location** by order of civil or military authority if:

        **a.** the order results from a **covered loss**; or

        **b.** the order results from damage by a **peril insured against** to the type of property covered by this policy within one (1) statute mile of a **covered location**.

    This coverage will apply for a period not to exceed twenty-one (21) consecutive days from the date of the order.

    **3.** **We** will not pay for:

        **a.** Loss of **business income**.

        **b.** Costs which would have been incurred in conducting **your** business during the same period had no **covered loss** happened.

        **c.** The cost of permanent repair or replacement of property that has been damaged or destroyed.

        **d.** Any loss during any idle period.  Idle period includes, but is not limited to, any period when production, operation or service would cease or be prevented due to:

            **(1)** physical damage not insured under this policy on or away from the **covered location**;

            **(2)** planned or rescheduled shutdown or maintenance;

            **(3)** strikes or other work stoppage; or

            **(4)** any reason other than a **covered loss**.

        **e.** Any increase in loss due to:

            **(1)** suspension, cancellation or lapse of any lease, contract, license or order.

            **(2)** fines or damage for breach of contract for late or non-completion of orders, or for penalties of any nature.

        **f.** Any consequential, indirect or remote loss.

        **g.** Any loss resulting from damage to:

            **(1)** finished goods manufactured by **you**, nor for the time required for their reproduction.

            **(2)** property in **transit**.

        **h.** Any loss or expense recoverable elsewhere in this policy.

**Policy 19**

## COVERAGES (Continued)

4. The most **we** will pay for a loss under this coverage is the lesser of:

   a. **Your** actual **extra expense**; or

   b. The applicable **limit of liability** shown on the Schedule of the DECLARATIONS, Form RM1000, or any endorsements to this policy.

E. If coverage for equipment breakdown is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, the following provisions apply to loss or damage that results from or is caused by an **accident** to a covered **object**:

   1. Exclusions **B. 8., B. 9., B. 10.** and **B. 11.** in EXCLUSIONS, Form RM1003, do not apply to a **covered loss** that result from an **accident** to covered **object(s)**.

   2. **We** will pay if an **accident** to covered **object(s)** causes:

      a. Loss to property **you** own;

      b. Loss to the property of others in **your** care, custody or control and for which **you** are legally liable.

   3. If direct loss or damage to an electrical **object(s)** results from the peril of **flood we** will pay for the amount **you** actually expend to dry out the **object(s)**.

      **Our** payment to **you** will:

      a. Be subject to the applicable direct damage **limit of liability** and deductible as shown in **F. 1.** and **G. 2.** of the DECLARATIONS, Form RM1000, for damage to covered **object(s)**; and

      b. Not exceed the value of the damaged **object(s)**.

**Policy 20**

# EXTENSIONS OF COVERAGE

**A.**  Standard Extensions of Coverage

In the event of a **covered loss**, the coverage provided by this policy is extended as follows:

**1.**  Accounts Receivable

    **a.**  **We** will pay up to a **limit of liability** of $100,000 for the following expenses **you** incur directly resulting from loss or damage by a **peril insured against** to **your** records of accounts receivable at a **covered location**:

        **(1)**  Amounts due **you** from customers that **you** are unable to collect;

        **(2)**  Interest charges on any loan to offset amounts **you** are unable to collect, pending **our** payment of those amounts;

        **(3)**  Collection expense above **your** normal collection expense; and

        **(4)**  Reasonable expenses **you** incur to reestablish **your** records of accounts receivable.

    **b.**  For the purposes of this extension of coverage, the following additional exclusions apply and **we** will not pay for:

        **(1)**  Any loss that requires an audit or inventory to establish its existence;

        **(2)**  Any fraudulent, dishonest or criminal act done by:

            **(a)**  Anyone entrusted with the accounts receivables, including their employees and agents; or

            **(b)**  Anyone having an interest in the accounts receivable.

        This exclusion does not apply to the acts of a carrier for hire.

        **(3)**  Bookkeeping, accounting, or billing errors or omissions.

        **(4)**  Wrongful alteration, falsification, manipulation, concealment, destruction, or disposal of records of accounts receivable, committed to conceal the wrongful giving, taking, getting, or withholding of money, securities, or other property.

    **c.**  When records of accounts receivable have been damaged or destroyed, **you** must use all reasonable efforts, including legal action if necessary, to obtain collection of any outstanding accounts receivable, and **we** will pay such costs and expenses of obtaining collection to the extent they reduce **your** loss.

    **d.**  When records of accounts receivable have been damaged or destroyed, **you** will use any property or service owned or controlled by **you** or obtainable from other sources in order to reduce **your** loss.

    **e.**  If **you** are unable to accurately determine the amount of outstanding accounts receivable at the time of loss, **our** payment will be calculated in the following manner:

        **Your** average monthly accounts receivable amount, based on the twelve (12) months preceding the loss, adjusted for normal fluctuations in the month in which the loss occurs, or for any demonstrated variance for that month.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

**Policy 21**

## EXTENSIONS OF COVERAGE (Continued)

    **f.**   The following will be deducted from the total amount of accounts receivable, regardless of the method used to determine that amount:

        **(1)**  Balances for accounts not damaged or affected by the loss;

        **(2)**  Amounts of accounts **you** are able to reestablish and collect;

        **(3)**  An allowance for bad debts **you** are not normally able to collect; and

        **(4)**  All unearned interest and service charges.

**2.**  Arson Reward

If one (1) or more **covered losses** are caused by or result from any fires of a suspicious nature, **we** will pay a $25,000 reward to an individual or individuals provided:

    **a.**   The individual(s) report(s) the suspected arsonist to local law enforcement officials; and

        **(1)**  The arsonist is apprehended, brought to trial, and convicted of arson to **your covered property**; or

        **(2)**  The arsonist is apprehended, confesses and/or pleads guilty to arson to **your covered property** without going to trial.

    **b.**   **Our** payment of this reward will not be increased by:

        **(1)**  The number of individuals reporting the arsonist(s);

        **(2)**  The number of arsonists involved in the **covered loss**; or

        **(3)**  The number of **covered losses**.

No deductible applies to this extension of coverage.

**3.**  Computer Virus and Denial of Access

**We** will pay up to $25,000 for loss or damage to, or any cost, claim or expense caused by or resulting directly or indirectly from any of the following, regardless of any other cause or event that contributes to the loss, damage, cost, claim or expense at the same time or in any sequence:

    **a.**   The introduction of a malicious code, program, virus, worm, Trojan Horse program, macro time or logic bomb or similar unauthorized instruction which is designed or intended to damage, corrupt, destroy, distort, or delete any part of the system or disrupt its normal operation, into any of the following, whether owned by **you** or others:

        **(1)**  **Data processing equipment**, **software**, **data**, or **media**;

        **(2)**  Information repository;

        **(3)**  Hardware or **software** based computer operating systems;

        **(4)**  Microprocessors;

        **(5)**  Integrated circuits;

        **(6)**  Computer networks;

## EXTENSIONS OF COVERAGE (Continued)

    **(7)** Website service; or

    **(8)** Any other electronic equipment, computerized equipment, or similar device.

  **b.** A change in the functionality, availability, operation, use of accessibility to or operation of any of the items described in **3. a. (1) - (8)** above.

**4.** Debris Removal Expense

  **a.** **We** will pay for the expense to remove the debris from a **covered loss**. **We** will only pay these expenses if **we** receive immediate written notice of the **covered loss** and if these expenses are reported to **us** in writing within one-hundred-eighty (180) days of the date of the **covered loss**.

  **b.** Debris removal expense is limited to a sublimit of liability of $250,000.

  **c.** **We** will pay up to $25,000 for expenses to remove from a **covered location**, windblown debris of property not covered by this policy.

  **d.** Debris removal expense does not include any costs to clean up or remove **pollutants**, **fungus**, bacteria, wet or dry rot, or decay.

**5.** Deferred Payments

  **a.** **We** will pay up to a sublimit of liability of $25,000 for the uncollectable, unpaid balance owed **you** for direct physical loss or damage caused by or resulting from a **peril insured against** to **personal property** of the type covered by this policy that was sold by **you** under a conditional sale or trust agreement or any installment or deferred payment plan after the **personal property** has been delivered to **your** client and is now in their care, custody and control.

  **b.** In the event of loss or damage caused by or resulting from a **peril insured against** to **personal property** sold under any of the payment plans shown in **5. a.** above, **you** will use all reasonable effort, including legal action against **your** client, to:

    **(1)** Collect any outstanding balance due **you**; or

    **(2)** Regain possession of the **personal property**.

  **c.** **We** will not pay for loss or damage caused by or resulting from:

    **(1)** A recall of **your** product. This includes but is not limited to **your** cost to recall, test or to advertise the recall.

    **(2)** Theft or conversion of **your personal property** sold under any payment plan shown in **5. a.** above by **your** client after they have taken possession of the **personal property**.

  **d.** This extension of coverage only applies to **your personal property** sold under any of the payment plans shown in **5. a.** above that is located within the territory of this policy.

  **e.** Coverage provided by this extension does not apply if **your** client continues with their payments.

**6.** Duty to Defend

  **We** will defend that part of any suit against **you** involving **personal property of others** when all of the following conditions exist:

**Policy 23**

## EXTENSIONS OF COVERAGE (Continued)

    **a.**   The suit seeks payment for physical loss or damage to the **personal property of others**; and

    **b.**   The physical loss or damage is caused by a **peril insured against**; and

    **c.**   The physical loss or damage takes place while the **personal property of others** is in **your** custody; and

    **d.**   The **personal property of others** is the type of property covered by this policy.

**We** will do so even if such suit is groundless, false or fraudulent, but **we** may, without prejudice, make such investigation, negotiation and settlement of any claim or suit, as **we** deem appropriate.

**7.**   Extended **Period of Restoration**

    **a.**   If loss of **business income** coverage is provided, **we** will pay the actual loss of **business income you** sustain due to a reduction in sales, earnings or rental income that directly results from direct physical loss or damage to **your covered property** by a **peril insured against**, for the additional time required, when **you** use reasonable speed, to restore **your** business to the condition it would have been in if no loss had occurred.  This additional time starts with the time when the **period of restoration** would end, and continues for no more than sixty (60) consecutive days immediately following the **period of restoration**.

    **b.**   This extension of coverage does not apply if **you** elect not to either repair or replace **your covered property**, or to resume the operation of **your** business.  For purposes of this extension of coverage the exclusions and restrictions in this policy regarding loss of **your** market share do not apply to any claim made under this extension of coverage.

**8.**   Fire Department Charges

    **We** will pay charges **you** incur when the fire department is called to save or protect **covered property** from a **covered loss**.

**9.**   **Fine Arts**

    **We** will pay up to a sublimit of liability of $100,000 for **covered loss** to **your fine arts**.  **We** will not however pay for:

    **a.**   Loss or damage sustained from any repair, restoration, or retouching process;

    **b.**   Breakage of art glass windows, statuary, marble, glassware, bric-a-brac, porcelains, and similar fragile articles, unless caused by fire, lightning, aircraft, theft and or attempted theft, windstorm, **earth movement**, **flood**, explosion, vandalism, collision, derailment or overturn of conveyance; or

    **c.**   Loss or damage to **your fine arts** while away from a **covered location**.

**10.**  **Fungus** Cleanup Expense

    **a.**   If **fungus** results from a **covered loss** due to fire or lightning, **we** will pay up to the applicable **limit of liability** for the cost and expense:

       **(1)**  To remove **fungus** from **covered property** at a **covered location**;

       **(2)**  To repair or replace any undamaged portion of **covered property** at a **covered location** that must be removed to gain access to **fungus** in order to remove it; and

       **(3)**  To test for the presence of **fungus** on **covered property** at a **covered location** after **fungus** has been removed as provided by this extension.

**Policy 24**

## EXTENSIONS OF COVERAGE (Continued)

   **b.**  If **fungus** results from a **covered loss** due to a **peril insured against** other than fire or lightning, **we** will pay up to $250,000 for the costs and expenses outlined in **10. a. (1) – (3)** of this extension of coverage.

   **c.**  In order for this extension of coverage to apply **we** must receive immediate written notice of the **covered loss**, and these costs and expenses must be reported to **us** in writing within one-hundred-eighty (180) days of the date of the **covered loss**.

   **d.**  The removal and testing for **fungus** does not include any costs to remove **pollutants**.

**11.**  Installation of **Personal Property** or **Personal Property of Others**

   **We** will pay up to $250,000 for direct physical loss or damage by a **peril insured against** to **your personal property**, or **personal property of others**, which **you** have sold under an installation agreement, if **your** responsibility continues until the purchaser accepts the installation.  Installation coverage applies to any non-owned location within the policy territory.

**12.**  Lock and Key Replacement

   **a.**  When a master key or grand master key is lost or damaged from a **covered loss**, **we** will pay the lesser of:

     **(1)**  The actual cost to replace keys;

     **(2)**  The cost to rekey or reprogram the current locks to accept new keys; or

     **(3)**  When needed, new locks including the installation and reprogramming of the new locks.

   **b.**  The most **we** will pay in any one (1) **occurrence** for this extension of coverage is a sublimit of liability of $25,000.

**13.**  **Personal Property** of Employees

   **We** will pay for loss or damage by a **peril insured against** to the **personal property** (other than vehicles) of **your** employees when such property is at a **covered location** or being used by the employee in the course of employment.  **We** will not pay for any loss or damage to such property that occurs at the employee's residence.

**14.**  Plants, Trees or Shrubs

   **We** will pay up to a sublimit of liability of $100,000 for a **covered loss** to plants, trees and shrubs, however loss or damage caused by freezing, disease or drought is excluded.

**15.**  **Pollution** Cleanup Expense

   **a.**  ~~**We** will pay to remove **pollutants** from **covered property** at a **covered location** if the **pollution** results from a~~ **specified peril**, subject to the applicable **limit of liability**.

   **b.**  **We** will pay up to an annual aggregate **limit of liability** of $25,000 to remove **pollutants** from **covered property** at a **covered location**, if the **pollution** results from a **peril insured against** other than a **specified peril**.

   **c.**  If **pollution** results from a **peril insured against**, **we** will pay up to an annual aggregate **limit of liability** of $25,000:

     **(1)**  To remove **pollutants** from land, soil, surface or ground water upon, within, beneath or comprising a **covered location**; or

     **(2)**  For testing performed in the course of extracting the **pollutants** from **covered locations**.

## EXTENSIONS OF COVERAGE (Continued)

**We** will pay for removal or testing after a **covered loss** that occurs during the **policy period**.

**We** will only pay these expenses if **we** receive immediate written notice of the **covered loss** and if these expenses are reported to **us** in writing within one-hundred-eighty (180) days of the date of the **covered loss**.

16. Professional Fees

   **a.** **We** will pay up to $25,000 for the reasonable costs **you** incur, for auditors, architects, accountants and engineers whom **you** hire to prepare and verify the details of a claim from a **covered loss**.

   **b.** Professional fees covered under this extension, however, do not include:

   **(1)** any fees or expenses of attorneys;

   **(2)** any fees or expenses of public adjusters or any of their subsidiaries or associated entities;

   **(3)** fees based on a contingency; or

   **(4)** the cost of **your** own employees.

17. Removal

   **a.** **We** will pay the reasonable and necessary costs or expenses **you** incur:

   **(1)** to remove **covered property** from locations under imminent threat by a **peril insured against**; and

   **(2)** to return the **covered property** to the original location it had been removed from once the danger by a **peril insured against** has ended.

   **b.** When **covered property** has been removed for this reason, it will be insured against loss or damage from a **peril insured against** at the temporary location according to the following terms:

   **(1)** For up to ninety (90) days at each place to which the property has been taken for preservation;

   **(2)** The applicable **limit of liability** will apply to each temporary location on a pro rata basis, based on the value **your covered property** stored at that location bears to the total value of **covered property** originally insured at the location under imminent threat.

The sublimits of liability, rewards or other amounts payable under these standard extensions of coverage do not increase and are not in addition to any other applicable **limit of liability**.

**B.** Optional Extensions of Coverage

These extensions of coverage apply only if the applicable sublimit of liability is shown in **E.** Optional Extensions of Coverage – Sublimits of Liability of the DECLARATIONS, Form RM1000.

1. Course of Construction

   **a.** **We** will pay for direct physical loss or damage to **real property** of the type insured by this policy, including new additions and buildings at an existing **covered location**, that **you** begin to construct during the **policy period**.

   **(1)** This coverage only applies for sixty (60) days from the date **you** begin construction.

**Policy 26**

## EXTENSIONS OF COVERAGE (Continued)

      **(2)** To continue this coverage beyond the sixty (60) days, **you** must:

          **(a)** Report newly constructed **real property** to **us** prior to the end of that sixty (60) day period; and

          **(b)** Pay premium from the date **you** begin construction.

   **b.** **We** will also pay under this extension of coverage for materials, supplies, machinery, equipment and fixtures, including those that are **personal property of others**, which are:

      **(1)** Intended by **you** for use in construction; and

      **(2)** Located on the construction site awaiting use in construction.

   **c.** This coverage only applies to the construction of **real property you** intend to own or occupy once constructed.

**2.** Errors and Omissions

   If a **covered loss** is not payable under this policy solely because of an error or unintentional omission made by **you**:

   **a.** In the description of where **covered property** is physically located;

   **b.** To include any location:

      **(1)** owned, rented or leased by **you** on the **effective date** of this policy; or

      **(2)** purchased, rented or leased by **you** during the term of the policy; or

   **c.** That results in cancellation of the property insured under this policy, except for cancellation due to nonpayment of premium.

   Then **we** will pay the amount **we** would have paid had the error or omission not been made, but not exceeding the **limit of liability** provided for Errors and Omissions shown on the DECLARATIONS, Form RM1000.

   This coverage does not apply, however, if coverage is found, in whole or in part, elsewhere in this policy.

**3.** Exhibitions, Expositions, Fairs or Trade Shows

   **We** will pay for loss or damage to **your personal property** while at an exhibition, exposition, fair or trade show.

   Coverage also applies while **your personal property** is being transported between a **covered location** and the location of the exhibition, exposition, fair or trade show.

**4.** Miscellaneous Locations

   **Miscellaneous locations** are insured for coverages marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and coverages provided by endorsement.

**5.** New Locations

   **a.** **New locations** are insured for coverages marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and coverages provided by endorsement for the period of time specified in **E. 4. h.** of the DECLARATIONS, Form RM1000.

## EXTENSIONS OF COVERAGE (Continued)

    **b.**   To continue this coverage beyond the time frame specified, **you** must:

        **(1)**  Report **new locations** to **us** prior to the end of the period specified on the DECLARATIONS, Form RM1000; and

        **(2)**  Pay premium from the date **you** purchase or rent these **new locations**.

**6.**  Demolition Cost, Increased Construction Cost and Operation of Building Laws

    **a.**   In the event of a **covered loss**, **we** will pay:

        **(1)**  Demolition Cost

        The cost incurred to demolish all or part of **your covered real property**, including the cost to clear the site, if any law or ordinance that exists at the time of loss requires such demolition.

        **(2)**  Increased Construction Cost

        The increased cost **you** incur for materials and labor required to rebuild the damaged portion of **your real property** at the same location and in a manner that satisfies the minimum requirements of the applicable law or ordinance existing at the time of the loss.

        **(3)**  Operation of Building Laws

        The cost **you** incur to rebuild at the same location any undamaged part of **your real property** that is required by law to be demolished after a **covered loss**, excluding any costs associated with demolition. **We** will only pay the costs to satisfy the minimum requirements of the applicable law or ordinance that exists at the time of the loss.

    **b.**   **We** will not pay for any of these costs:

        **(1)**  Unless they are incurred within two (2) years from the date of loss.

        **(2)**  If they are incurred due to any law or ordinance that:

            **(a)**  **You** were required to comply with before the loss, even if the building was undamaged; and

            **(b)**  **You** failed to comply with.

        **(3)**  If they are associated with any demolition, abatement, removal, cleanup, debris removal, repair, monitoring or testing, increased cost of repair or other cost resulting from enforcement of any such law or ordinance which relates to **pollution**, **fungus**, bacteria, wet or dry rot, or decay.

**7.**  Salespeople

    **a.**   **Your** covered **personal property** in the custody of salespeople.

    **b.**   Coverage does not apply to loss or damage by theft from the salespersons vehicle unless:

        **(1)**  The vehicle is equipped with a fully enclosed body or compartment;

        **(2)**  The doors, windows and hatches were securely locked; and

**Policy 28**

## EXTENSIONS OF COVERAGE (Continued)

(3)  There are visible signs of forced entry to the vehicle

at the time of loss.

8.  **Transit**

**Your** covered **personal property** while in **transit**.

This extension of coverage also applies to **personal property of others** while in **transit** at **your** risk, but does not apply if **you** are acting as a common or contract carrier.

9.  **Unscheduled Locations**

**Unscheduled locations** are insured for coverages marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and coverages provided by endorsement.

The sublimits of liability or amounts payable under these optional extensions of coverage do not increase and are not in addition to any other applicable **limit of liability**.

RM1002 02-11

**Policy 29**

# EXCLUSIONS

## A.  GROUP A EXCLUSIONS

**We** will not pay for loss or damage caused by or resulting from any of the following, regardless of any other cause or event, including a **peril insured against**, that contributes to the loss at the same time or in any other sequence:

1.  Loss attributable to:

    a.  War, including undeclared or civil war; or

    b.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c.  Insurrection, rebellion, revolution, usurped power, including action taken by a governmental authority in hindering or defending against any of these

    whether or not involving the use of any chemical, biological or nuclear substance.

2.  **Earth movement**, whether sudden or gradual.

    a.  If a loss to **covered property** by fire, theft, or explosion ensues, **we** will pay for that loss.

    b.  This exclusion does not apply to **covered property** in **transit**.

    c.  This exclusion does not apply to **sinkhole collapse** or **volcanic activity**.

3.  **Flood**.

    a.  If a loss to **covered property** by fire, theft, or explosion ensues, **we** will pay for that loss.

    b.  This exclusion does not apply to **covered property** in **transit**.

4.  **Fungus**, bacteria, wet or dry rot, decay.

    If a loss to **covered property** from a **specified peril** ensues, **we** will pay for that loss.

5.  **Pollution**.

6.  Demolition cost, operation of building laws and increased cost of construction including the enforcement of any ordinance or law regulating the use, construction, repair or demolition of buildings or structures.

7.  Seizure or destruction of **covered property** by government order.

    **We** will pay for loss to **covered property** resulting from acts of destruction ordered by government to prevent the spread of fire.

8.  Nuclear reaction or nuclear radiation, or radioactive contamination.

    If a loss to **covered property** by fire ensues, **we** will pay for that loss unless otherwise limited or excluded elsewhere in this policy, including any limits or exclusions applicable to terrorism.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

**Policy 30**

## EXCLUSIONS (Continued)

9. Interference with or interruption of any public or private utility or any entity providing electrical, heating, air conditioning, refrigeration, telecommunication, steam, water, sewer or fuel service or any other service, if the failure occurs away from the **covered location**.

   If a **covered loss** ensues, **we** will pay for that loss.

10. The actual or suspected presence or threat of any virus, organism or like substance that is capable of inducing disease, illness, physical distress or death, whether infectious or otherwise, including but not limited to any epidemic, pandemic, influenza, plague, SARS or Avian Flu.

11. Except as shown in **A. 3.** Standard Extensions of Coverage of EXTENSIONS OF COVERAGE, Form RM1002, loss attributable to:

    a. The introduction of a malicious code, program, virus, worm, Trojan Horse program, macro time or logic bomb or similar unauthorized instruction which is designed or intended to damage, corrupt, destroy, distort, or delete any part of the system or disrupt its normal operation, into any of the following, whether owned by **you** or others:

       (1) **Data processing equipment, software, data,** or **media;**

       (2) Information repository;

       (3) Hardware or **software** based computer operating systems;

       (4) Microprocessors;

       (5) Integrated circuits;

       (6) Computer networks;

       (7) Website service; or

       (8) Any other electronic equipment, computerized equipment, or similar device.

    b. Programming, operation or operator error of any of the items described in **11. a. (1) - (8)**.

    c. Incompatibility, or the inability to properly interface between any of the items described in **11. a. (1) - (8)**.

    d. A change in the functionality, availability, operation, use of, accessibility to or operation of any of the items described in **11. a. (1) - (8)**.

    e. Inability, failure or malfunction of the items as described in **11. a. (1) - (8)** or any services, functions, or products that use or rely upon in any manner one (1) or more of the items as described in **11. a. (1) - (8)** to correctly recognize, distinguish, interpret, process, provide or accept **data** or one (1) or more dates or times.

    f. Advice, consultation, evaluation, design, inspection, installation, repair, replacement or maintenance done by **you** or for **you** to determine or correct any conditions or problems described by in **11. a. - e.**

    If loss to **covered property** by any of the following perils ensues, **we** will pay for that loss;

    a. Fire;

    b. Explosion; or

    c. Leakage or accidental discharge from automatic fire protection system.

    However, **we** will not pay for modification, repair or replacement of systems or devices described in **11. a. (1) - (8)** in order to correct any potential or actual deficiencies or to change any features.

RM1003 02-11                                                                 Page 2 of 4

**Policy 31**

## EXCLUSIONS (Continued)

**B.   GROUP B EXCLUSIONS**

**We** will not pay for loss or damage caused by or resulting from any of the following:

1.   Unexplained or mysterious disappearance of any property.

2.   Shortage of property discovered on taking inventory.

3.   Theft by employees, whether acting alone or with others.

4.   Any criminal, fraudulent or dishonest acts committed alone or in collusion with others:

   a.   By **you;**

   b.   By any of **your** associates, proprietors, partners, directors, trustees, officers, agents, employees or representatives; or

   c.   By any person or entity to whom **you** or any of **your** associates, proprietors, partners, directors, trustees, officers, agents, employees or representatives voluntarily relinquishes possession of **covered property** with or without **your** authority.

   However, acts of destruction, including vandalism, by employees to **covered property** shall not be subject to this exclusion.

5.   Manufacturing or processing operations, which result in damage to stock or materials while the stock or materials are being processed, manufactured, worked on or tested.

   If a **covered loss** ensues, **we** will pay for that loss.

6.   Delay, loss of market, loss of use, indirect or remote loss or damage.

7.   Loss attributable to:

   a.   Wear and tear, deterioration, depletion, erosion, rust, corrosion;

   b.   Inherent vice, latent defect, or any quality in the **covered property** that causes it to damage or destroy itself;

   c.   Smog, acid rain, agricultural smudging;

   d.   Smoke, fumes, gas or vapor that result from industrial operations;

   e.   Settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings, retaining walls or outdoor swimming pools;

   f.   Animals, birds, vermin, rodents or insects;

   g.   Change or extremes in temperature or humidity, whether atmospheric or not, except damage to equipment; or

   h.   Contamination, shrinkage, change in taste, texture, finish or color.

   If a **covered loss** ensues, **we** will pay for that loss.

8.   Failure or breakdown of machinery or equipment, including rupture or bursting caused by centrifugal force.

   If a **covered loss** ensues, **we** will pay for that loss.

   This exclusion will not apply to physical loss to **data**, **data processing equipment** or **software**.

**Policy 32**

## EXCLUSIONS (Continued)

9. Explosion of the following:

   a.  Steam boilers;

   b.  Steam turbines, steam engines, steam piping, electric steam generators; or

   c.  Gas turbines.

   If a loss to **covered property** by fire or explosion ensues, **we** will pay for that loss.

10. Rupture, bursting, cracking, burning or bulging of the following:

   a.  Steam boilers;

   b.  Steam turbines, steam engines, steam piping, electric steam generators;

   c.  Hot water boilers or other equipment for heating water;

   d.  Pressure vessels; or

   e.  Gas turbines.

   If a loss to **covered property** by fire or explosion ensues, **we** will pay for that loss.

11. Any electrical injury or disturbance to electrical appliances, devices, fixtures, wiring or other electrical or electronic equipment caused by electrical currents artificially generated.

   If a fire or an explosion loss ensues, **we** will pay for that loss.

   This exclusion will not apply to physical loss to:

   a.  **Data** or **software** caused by injury, disturbance, or erasure resulting from electricity or magnetic fields; or

   b.  **Data processing equipment** caused by short circuit, blowout, or other electrical damage.

12. Loss attributable to faulty, defective or inadequate:

   a.  Construction, workmanship or material;

   b.  Maintenance;

   c.  Design, plan or specification;

   d.  Developing, surveying or siting of buildings or structures during the course of construction or alterations.

   If a **covered loss** ensues, **we** will pay for that loss.

13. Loss or damage to bulkheads, piers, wharves, docks, seawalls or jetties from freezing or thawing, impact of watercraft, or by the pressure or weight of ice or water whether driven by **wind** or not.

14. Acts or decisions, including the failure to act or decide, of any governmental employee, agent, group, organization, agency or body.

   If a **covered loss** ensues, **we** will pay for that loss.

**Policy 33**

## PROPERTY NOT COVERED

**We** do not cover loss to:

A.  Aircraft;

B.  Animals;

C.  Bridges or tunnels, however pedestrian walkways connecting buildings are covered;

D.  Caves, caverns, mines of any type, or any property contained within them;

E.  Contraband or property in the course of illegal transportation or trade;

F.  Currency, money, securities and negotiable instruments of any kind;

G.  Dams, dikes, levees;

H.  Furs, jewelry;

I.  Locomotives, including rolling stock;

J.  **Mobile equipment or tools**, when more than one-thousand (1,000) feet away from a **covered location**;

K.  Precious metal, except when used in industrial or service operations;

L.  Precious stones, except when used in industrial or service operations;

M.  Property insured under import or export ocean cargo policies;

N.  Property **you** transport as a common or contract carrier;

O.  Property shipped by mail, unless sent registered or certified;

P.  Vehicles, licensed for highway use, when more than one-thousand (1,000) feet away from a **covered location**.  If **your** vehicles, licensed for highway use, are covered for physical damage by other insurance, **you** agree that such other insurance is considered **your** primary coverage for any loss or damage that occurs;

Q.  Water, land, including land on which **covered property** is located, lawns, growing crops, or standing timber;

R.  Watercraft, except watercraft that is part of **your** inventory while being stored un-fueled and on dry land at a **covered location**.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1004 02-11

**Policy 34**

# VALUATIONS

## A.  Replacement Cost

1.  Loss or damage to **covered property** will be valued at the time and place of the loss at **replacement cost** unless otherwise indicated in **B.** and **C.** below or by other forms or endorsements attached to this policy.

2.  **We** will not pay **replacement cost** until the lost or damaged property is actually repaired or replaced.  If repairs or replacement are not made within two (2) years after the date of the physical loss **we** will pay only the **actual cash value** amount.

    a.  **Our** obligations for **replacement cost** will be the smaller of:

        (1)  The cost to repair the damaged property; or

        (2)  The cost to replace or rebuild with new materials of like size, kind and quality; or

        (3)  The selling price of **your real property** or **personal property**, other than stock, that is offered for sale, less all saved expenses; or

        (4)  The amount of **your** legal liability to the owner of **personal property of others**; or

        (5)  The applicable **limit of liability**.

    b.  **We** will not pay for any increase in cost due to **your** failure to use reasonable speed to repair, rebuild or replace the damaged property.

    c.  If the replacement occurs at another location, **we** will not pay for the cost of land at either the original or the **new location**.

3.  If **you** elect not to rebuild **your real property** after a **covered loss**, **you** may still make claim for the **covered loss** to **your real property** at **replacement cost**, excluding any amounts for demolition or increased cost of construction, provided;

    a.  **you** actually spend those funds on capital expenditures to improve **real property** at **covered locations** within the policy territory;

    b.  those capital expenditures were not planned as of the date of loss; and

    c.  **you** make claim for the expenditure of these funds within two (2) years of the date of loss.

4.  If an **object** requires replacement due to an **accident**, **we** will pay **your** additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

    However, **we** will not pay more than one-hundred twenty-five (125) percent of what the cost would have been to repair or replace the **object(s)** with like kind and quality.

    This does not apply to any property subject to valuation based on **actual cash value**, nor does this provision increase any other applicable **limit of liability**.

    The **period of restoration** will not be increased by any of the above.

## B.  Actual Cash Value

Loss or damage to these types of **covered property** will be valued at **actual cash value** at the time and place of loss:

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1005 02-11

**Policy 35**

## VALUATIONS (Continued)

    **a.**  Manuscripts;

    **b.**  **Mobile equipment or tools**; and

    **c.**  Vehicles licensed for highway use.

**C.**  Other Valuations

Loss or damage to these types of **covered property** will be valued at the time and place of loss as follows:

**1.**  Exposed film

    The value of unexposed film of the same type and quality.

**2.**  **Fine Arts**

    **a.**  The lesser of the:

        **(1)**  Reasonable or necessary restoration or repair costs needed to return the damaged article(s) to its condition as of the time of loss;

        **(2)**  Cost to replace the damaged article;

        **(3)**  Value specified for an article(s) if shown on a schedule of **fine arts** on file with **us**, or

        **(4)**  Value specified for an article(s) if shown on the schedule of any form or endorsement attached to this policy.

    **b.**  In the event of the total loss of an article or articles which are a part of a pair or set, **we** will pay **you** the full amount of the value of such set as determined in **C. 2. a.** above and **you** will surrender the remaining article or articles of the set to **us**.

**3.**  Finished goods manufactured by **you**

    The regular cash selling price at the location where the loss happens, less all discounts and charges to which the merchandise would have been subject had no loss occurred.

**4.**  **Media**, **data**, programs or any **software** stored on electronic, electromechanical, electromagnetic **data processing equipment** or production equipment.

    The cost of transferring such from backup or from originals of a previous generation. **We** will not pay for any other cost, including research, engineering or other cost of restoring or recreating lost information.

**5.**  Stock in process

    The value of raw materials and labor expended plus the proper proportion of overhead charges.

**6.**  **Valuable papers and records**

    The value blank, plus the cost of copying from backup or from originals of a previous generation. **We** will not pay for any other cost, including research, engineering or other cost, of restoring or recreating lost information.

**Policy 36**

## CONDITIONS

**A.** Abandonment of Property

**You** may not abandon property to **us**.

**B.** Appraisal

1. If **you** fail to agree with **us** on the amount of a loss, either party may demand that the disputed amount be submitted for appraisal.  A demand for appraisal will be made in writing within sixty (60) days after **our** receipt of proof of loss.  Each party will then choose a competent and disinterested appraiser.  Each party will notify the other of the identity of its appraiser within thirty (30) days of the written demand for appraisal.

2. The two (2) appraisers will choose a competent and disinterested umpire.  If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition a judge of a court of record in the state where the **covered loss** happened, to select an umpire.

3. The appraisers will then set the amount of the loss or damage.  If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage.  If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire.  Written agreement signed by any two (2) of these three (3) will set the amount of loss or damage.

4. Each appraiser will be paid by the party that selects him or her.  Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**.

**C.** Assignment

**Your** assignment of this policy will not be valid except with **our** written consent.

**D.** Brands and Labels

In the event of a **covered loss** to branded or labeled merchandise, **we** may choose to take title to all or any part of that merchandise, at the value established by the terms of this policy.  **You** may, at **your** expense:

1. Stamp "salvage" on the merchandise or its containers; or

2. Remove or obliterate the brands or labels if such removal or obliteration will not physically damage the merchandise. **You** must re-label the merchandise or containers in compliance with the requirements of law.

**E.** Breach of Condition

A breach of any condition of this policy at any **covered location** will not affect coverage at any other **covered location** where, at the time of loss or damage, no breach exists.

**F.** Cancellation

1. **You** may cancel this policy by mailing or delivering to **us** advance written notice of cancellation.

2. If this policy has been in effect for less than sixty (60) days and is not a renewal of a policy **we** issued, **we** may cancel this policy for any reason by giving **you** written notice of cancellation at least:

   **a.** Ten (10) days before the date of cancellation if **we** cancel for nonpayment of premium; or

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

**Policy 37**

## CONDITIONS (Continued)

**b.** Sixty (60) days before the date of cancellation if **we** cancel for any other reason.

**3.** If this policy has been in effect for sixty (60) days or more or is a renewal of a policy **we** issued, **we** may cancel this policy by giving **you** written notice of cancellation at least:

**a.** Ten (10) days before the date of cancellation if **we** cancel for one (1) or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Conviction of a crime arising out of acts increasing the likelihood of a **covered loss**;

**(3)** Discovery of fraud or material misrepresentation by **you** in obtaining this policy or in pursuing a claim under this policy;

**(4)** Discovery of any willful or reckless act or omission by **you** increasing the likelihood of a **covered loss**; or

**(5)** A determination by the Commissioner of Insurance that continuation of the policy would violate or place **us** in violation of the law.

**b.** Sixty (60) days before the date of cancellation if **we** cancel for one (1) or more of the following reasons:

**(1)** Physical changes in the property, which increase the likelihood of a **covered loss**;

(2) A material increase in the likelihood of a **covered loss**; or

**(3)** Loss or decrease of **our** reinsurance covering the insurance provided by this policy.

**4.** If **we** cancel for nonpayment of premium, **you** may continue the coverage and avoid cancellation by making full payment any time prior to the date of cancellation.

**5.** Notice of Cancellation will be delivered or sent by;

**a.** Registered mail;

**b.** Certified mail; or

**c.** First-Class mail.

**We** will mail or deliver the notice to **your** last mailing address known to **us**.

**6.** Notice of cancellation will state the reason for cancellation, and the effective date of cancellation. The **policy period** will end on that date.

**7.** If this policy is canceled, **we** will send to **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund will be 90% of pro rata. The cancellation will be effective even if **we** have not yet made or offered a refund.

**8.** If notice is mailed, proof of mailing will be sufficient evidence of notice.

**G.** Change of Terms

The terms of this insurance will not be waived, changed, or modified except by written endorsement issued by **us** and which becomes a part of this policy.

## CONDITIONS (Continued)

**H.**  Collection from Others

Payment to **you** for a **covered loss** will be reduced to the extent **you** have collected that loss from others.

**I.**  Concealment, Misrepresentation or Fraud

This entire policy is void, if with the actual intent to deceive

1.  **You;**

2.  **Your** representatives; or

3.  any insured;

commit fraud or conceal or misrepresent a fact or circumstance concerning

1.  This policy;

2.  The **covered property;**

3.  **Your** interest in the **covered property;** or

4.  A claim under this policy.

**J.**  Inspection

1.  During the period of this policy, **we** will be permitted, but not obligated, to inspect the **covered property**.  Neither **our** right to make inspections, nor making them, nor any report of them, will imply for **you** or others, nor constitute an undertaking, that the **covered property** is safe, healthful, or in compliance with laws, regulations, codes or standards.

2.  This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

    **We** will have no liability to **you** or others because of any inspection or failure to inspect.

**K.**  Liberalization

If, during the **policy period** or forty-five (45) days prior to the **policy period**, a filing of **ours** to a state insurance department would broaden this insurance without requiring any additional premium, then the terms and coverage of that filing will apply to **covered locations** and **covered property** within that state, effective on the dates specified within the filing.

**L.**  Loss Payee

In the event of a **covered loss** to property in which both **you** and a loss payee shown on the SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES, Form RM1102, have an insurable interest, **we** will:

1.  Adjust the **covered loss** with **you**; and

2.  Make payment for the **covered loss** to **you** and the loss payee jointly, as their interests may appear.

**Policy 39**

## CONDITIONS (Continued)

**M.** Mortgage Holders

    **1.** **We** will pay for **covered loss** to buildings or structures to each mortgage holder shown on the SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES, Form RM1102, as their interests may appear.

    **2.** A mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

    **3.** If **we** deny **your** claim because of **your** acts or because **you** have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment, up to the amount of their insurable interest, but in no event more than the applicable **limit of liability**, if the mortgage holder:

        **a.** Pays any premium due under this policy at **our** request;

        **b.** Submits a signed, sworn proof of loss within sixty (60) days after receiving notice from **us** of **your** failure to do so; and

        **c.** Has notified **us** of any change in ownership, occupancy, or substantial change in risk known to the mortgage holder.

    All terms and conditions of this policy will then apply directly to the mortgage holder.

    **4.** If **we** pay the mortgage holder for any **covered loss** and deny payment to **you** because **you** have failed to comply with the terms of this policy:

        **a.** The mortgage holder's rights under the mortgage will be transferred to **us** to the extent of the amount **we** pay; and

        **b.** The mortgage holder's right to recover the full amount of the mortgage claim will not be impaired.

    In the event of a **covered loss**, **we** will, at **our** option, pay the mortgage holder the whole principal of **your** mortgage plus any accrued interest. In that event, **your** mortgage and note will be transferred to **us**, and **you** will pay **your** remaining mortgage debt to **us**.

    **5.** If **we** cancel or nonrenew this policy, **we** will give the mortgage holder the same notice **we** give to **you**.

    **6.** The term "mortgage holder" includes trustee.

**N.** No Benefit to Bailee

    No person or organization, having custody of **your covered property**, will benefit from this policy.

**O.** No Reduction by Loss

    Except for those coverages written with an annual aggregate **limit of liability** or sublimits of liability, **we** will pay for a **covered loss** without reducing any other applicable **limit of liability** or sublimits of liability.

**P.** Nonrenewal

    **1.** If **we** decide not to renew this policy, **we** will mail or deliver a written notice of nonrenewal to **you** at least sixty (60) days before the expiration date of this policy. Notice will be sent to **your** last mailing address known to **us**. **We** will state the reason for nonrenewal.

## CONDITIONS (Continued)

    **2.**   This notice will be delivered or sent by:

        **a.**   Registered mail;

        **b.**   Certified mail; or

        **c.**   First-Class mail.

    **3.**   If notice is mailed, proof of mailing will be sufficient evidence of notice.

**Q.**  Other Insurance

    **1.**   If there is any other insurance that would apply in the absence of this policy, **we** will pay for a **covered loss** only after the limits of all other applicable insurance are exhausted.

    **2.**   If this policy is deemed by law to contribute to a loss with other insurance, **we** will pay only **our** proportionate share of the loss, up to the applicable **limit of liability**. **Our** share will be the proportion that the applicable **limit of liability** of this policy bears to the total applicable **limits of liability** available from all insurance.

    **3.**   **You** are permitted to have other insurance over any limits or sublimits of liability specified in this policy.

    **4.**   The existence of such insurance will not reduce any limit or sublimit of liability in this policy.

    **5.**   To the extent this policy replaces another policy, coverage under this policy shall not become effective until such other policy has terminated.

**R.**  **Our** Options

At **our** option, **we** will repair, rebuild or replace damaged **covered property** with other property of like kind and quality within a reasonable period of time. If **we** elect to repair or replace the **covered property**, **we** will notify **you** of that decision within sixty (60) days of **our** receipt of **your** proof of loss. **We** will, at **our** option, take title to all or any part of the damaged or destroyed property at the agreed or appraised value.

**S.**  Pair, Set or Parts

In the event of a **covered loss** to an article that is part of a pair or set, **our** payment for that loss will be:

    **1.**   The cost to repair or replace any part to restore the pair or set to its value before the **covered loss**; or

    **2.**   The difference between the value of the pair or set before and after the **covered loss**.

In no event will the loss of part of a pair or set be regarded as a total loss of the pair or set.

When **covered property** consists of several parts, **we** will pay only for the lost or damaged part.

**T.**  Payment of Loss

**We** will pay the **covered loss** within thirty (30) days after **we** receive and accept the signed, sworn Proof of Loss, if:

    **1.**   **You** have complied with all the terms of this policy;

## CONDITIONS (Continued)

2. **We** have reached agreement with **you** on the amount of **covered loss**, or

3. An appraisal award is made as provided for in Condition **B.** Appraisal.

U. **Policy Period** and Territory

**We** will only pay for direct physical loss or damage to **covered property** of the type insured by this policy as the result of a **peril insured against** during the **policy period** shown on the DECLARATIONS, Form RM1000, while the **covered property** is:

1. Within the continental United States of America, Hawaii and Puerto Rico;

2. Being moved on land or in the air within or between the continental United States of America and Canada; or moved on land or in the air within Hawaii or Puerto Rico; or

3. Being moved on inland waters and intercoastal waterways of the continental United States of America, or on any of the Great Lakes.

V. Recovered Property

1. If either **you** or **we** recover any **covered property** after **we** have paid for its loss, that party must give the other prompt written notice of the recovery.

2. If **we** recover the **covered property**, **we** will return it to **you**, if **you** so request. **You** must then return the amount **we** paid to **you** for it.

3. If **you** recover the **covered property**, **you** may either keep it or surrender it to **us**. If **you** choose to keep it, **you** must return the amount **we** paid to **you** for it.

W. Right to Adjust with Owner

1. **Covered losses** will be adjusted with **you** except as provided in Condition **M.** Mortgage Holders.

2. If a claim is made for damage to **covered property** of others, **we** will have the right to adjust that loss or damage with the owners of that property. **Our** payment to the owners will fully satisfy any claim of **yours** for damage to that property.

X. Subrogation

1. If **we** make payment for a loss, **you** will assign to **us** all **your** rights of recovery against any party for that loss. **We** will not acquire any rights of recovery **you** have waived prior to the loss. **You** agree to cooperate and not to waive, prejudice, settle or compromise any claim against any party after the loss has occurred.

2. **You** will be paid any recovery, in the proportion that **your** deductible and any provable uninsured loss bears to the total loss less **your** proportion of fees and expenses.

Y. Suit

No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the policy terms and conditions. Any suit against **us** must be brought within two (2) years after the date on which the direct physical loss or damage occurred, or the shortest time permitted by law, whichever is greater.

**Policy 42**

## CONDITIONS (Continued)

**Z.**   Suspension

If Equipment Breakdown is marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and **we** discover a dangerous condition relating to an **object**, **we** may immediately suspend the insurance provided by this coverage for that covered equipment by written notice mailed or delivered to **you** either at **your** address or at the location of any **object**. Suspended insurance may be reinstated by **us**, but only by an endorsement issued as part of this policy.  **You** will be credited for the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension.  The suspension will be effective even if **we** have not yet made or offered a refund.

**A.A.**   Titles of Paragraphs

The titles of the paragraphs of this policy and of any endorsements attached to it are only for reference.  They do not affect the terms to which they relate.

**B.B.**   Vacancy

   **1.**   If any of **your real property**:

      **a.**   is vacant at the inception of this policy; or

      **b.**   becomes vacant, and remains vacant for more than sixty (60) consecutive days, during the **policy period**;

      it is a requirement of this policy that **you**:

      **(1)**   Notify **us** in writing of the vacancy prior to loss or damage; and

      **(2)**   Maintain in complete working order the protective safeguards present prior to the vacancy.  Protective safeguards include, but are not limited to:

         **(a)**   Automatic sprinkler systems;

         **(b)**   Fire alarm systems;

         **(c)**   Guard or watchman services;

         **(d)**   Burglary systems; and

         **(e)**   Monitoring systems.

   **2.**   If the above requirements are not met, then in addition to the other terms, conditions, limitations and exclusions in this policy, **we** will:

      **a.**   Not pay for any loss or damage caused by or resulting from any of the following:

      **(1)**   Breakage of building glass;

      **(2)**   **Fungus** (including **fungus** cleanup);

      **(3)**   Sprinkler leakage, unless the system has been protected against freezing;

      **(4)**   Theft or attempted theft;

      **(5)**   Vandalism;

RM1006 02-11

**Policy 43**

## CONDITIONS (Continued)

    **(6)** Malicious mischief; or

    **(7)** Water damage.

  **b.** Value the loss or damage for the vacant **real property** (including any loss or damage to **personal property**) at the time of loss at the smaller of:

    **(1)** The **actual cash value**;

    **(2)** The actual cost to repair; or

    **(3)** The selling price, less all saved expenses, if it was being offered or listed for sale at the time of loss.

**3.** **Real property** is considered vacant unless at least thirty (30) percent of the square footage is:

  **a.** Being used by **you** to conduct **your** customary operations; or

  **b.** Rented by **you** to a tenant or sub-tenant and is being used by them to conduct their customary operations.

**4.** **Real property** is not considered vacant during its ongoing construction or renovation.

**C.C.** **Your** Duties After a Loss

In case of loss **you** will:

**1.** Give **us** immediate written notice of the loss;

**2.** Give notice of such loss to the proper authorities if the loss may be due to a violation of the law;

**3.** As soon as possible, give **us** a description of the property involved and how, when and where the loss happened;

**4.** Take all reasonable steps to protect the **covered property** from further damage;

**5.** Promptly separate the damaged property from the undamaged property, and keep it in the best possible order for examination;

**6.** Furnish a complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed under the valuation provision of the policy;

**7.** Keep an accurate record of all repair costs;

**8.** Keep all bills, receipts and related documents that establish the amount of loss;

**9.** As often as may reasonably be required:

  **a.** Permit **us** to inspect the damaged property and take samples for inspection, testing and analysis.

  **b.** Produce for inspection and copying, all of **your** books of account, business records, bills and invoices.

  **c.** Permit **us** to question, under oath, **you** and any of **your** agents, employees, or representatives involved in the purchase of this insurance or the preparation of **your** claim, including any public adjusters and any of their agents, employees or representatives, and verify **your** answers with a signed acknowledgment.

**Policy 44**

## CONDITIONS (Continued)

10. Submit to **us**, within ninety (90) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

   a. The time and cause of the loss;

   b. **Your** interest and the interest of all others in the property involved;

   c. Any other policies of insurance that may provide coverage for the loss;

   d. Any changes in title or occupancy of the property during the **policy period**; and

   e. The amount of **your** claimed loss.

   **You** shall also submit with the Proof of Loss:

   a. The inventory referred to in **C.C. 6.**;

   b. The records specified in **C.C. 7.** and **C.C. 8.**;

   c. Specifications for any damaged building; and

   d. Detailed estimates and invoices for the repair of any damage.

11. Cooperate with **us** in the investigation and adjustment of the loss.

# DEFINITIONS

**A.  Accident** means a sudden, fortuitous event that causes direct physical damage to an **object(s)**, which requires that the **object(s)** be repaired or replaced, in whole or in part.

**Accident**, however, does not include any of the following:

1.  Fire, including water or other means used to extinguish the fire;

2.  Combustion explosion.  This includes but is not limited to, a combustion explosion of any steam boiler or other fired vessel;

3.  Discharge of molten material from equipment including the heat from such discharged material;

4.  Depletion, deterioration, rust, corrosion, erosion, settling or wear and tear or any other gradually developing condition;

5.  Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance;

6.  Lightning;

7.  Any loss or damage caused by or resulting from any type of electrical or electronic insulation breakdown test; or

8.  Any loss or damage caused by or resulting from any type of hydrostatic, pneumatic or gas pressure test.

**B.  Actual cash value** means **replacement cost** less deduction for depreciation.

**C.  Average daily value (ADV)** means **your business income** that would have been earned during the **period of restoration** had no loss happened, divided by the number of operating days in that period.

The **average daily value (ADV)** applies to the **business income** value of the entire **covered location** whether or not the loss effects the entire **covered location**.  If more than one (1) **covered location** is included in the valuation of the loss, the **average daily value (ADV)** will be the combined value of all **covered locations.**

**D.  Business income** means:

Gross earnings, including rental income, plus all other earnings derived from the operation of the business, less all charges and expenses which do not necessarily continue.

For example:

1.  Manufacturing operations:

    The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production.

2.  Mercantile or nonmanufacturing operations:

    The net sales less the cost of merchandise sold and materials and supplies consumed in the operations or services rendered by **you**.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

**Policy 46**

## DEFINITIONS (Continued)

3. Property rental operations:

The total expected gross rental income from tenant occupancy of **your covered location(s)**. This also includes all charges which are the legal obligation of **your** tenants, which would otherwise be **your** obligations, and the fair rental value of any portion of **your covered location(s)** which **you** occupy.

E. **Covered location(s)** means those locations shown on the Schedule of the DECLARATIONS, Form RM1000, or on the Schedule of any endorsement to this policy.

F. **Covered loss** means a loss to **covered property** at a **covered location** resulting from a **peril insured against**.

G. **Covered property** means property insured by this policy.

H. **Data** means any information recorded on **media** and used in **your** processing operations.

I. **Data processing equipment** means processing units, terminals, tape drives, disk drives, controllers, printers, and other equipment capable of receiving, processing, storing or retrieving information.

J. **Earth movement**, whether natural or man-made, includes but is not limited to:

1. Earthquake;

2. Landslide;

3. Mudflow or mudslide; or

4. Sinking, rising or shifting of the earth.

K. **Effective date** means the day and time at which the insurance provided by this policy begins.

L. **Extra expense** means the reasonable and necessary extra costs:

1. Incurred to temporarily continue as nearly normal as practicable the conduct of **your** business; or

2. Of temporarily using property or facilities of **yours** or others.

3. For purposes of applying the above provision "normal" means the condition that would have existed had no **covered loss** happened.

M. **Fine arts** means property of rarity, antiquity, or artistic merit, including but not limited to paintings; etchings; pictures (including their negatives); tapestries; statuary; marbles; bronzes; antique jewelry; antique furniture; antique silver; rare books; porcelains; rare or art glassware; art glass windows; valuable rugs; bric-a-brac and porcelains.

N. **First tier wind Counties and Parishes** means the Counties and Parishes in the States as follows:

Baldwin and Mobile Counties in the State of Alabama;

All Counties in the State of Florida;

Bryan, Camden, Chatham, Glynn, Liberty and McIntosh Counties in the State of Georgia;

**Policy 47**

## DEFINITIONS (Continued)

The Hawaiian Islands;

Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St Bernard, St Mary, St Tammany, Terrebonne and Vermilion Parishes in the State of Louisiana;

Hancock, Harrison, and Jackson Counties in the State of Mississippi;

Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Currituck, Dare, Hyde, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington Counties in the State of North Carolina;

Beaufort, Charleston, Colleton, Georgetown, Horry and Jasper Counties in the State of South Carolina;

Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Refugio, San Patricio and Willacy Counties in the State of Texas; and

The Commonwealth of Puerto Rico.

**O.   Flood** means:

    **1.**   The release of water from, or the rising, overflowing, or breaking of boundaries of rivers, lakes, streams, ponds, or other natural or man-made bodies of water; or

    **2.**   Waves, tides, tidal waves, surface water, rain accumulation or runoff.

**Flood** includes spray from any of them, all whether driven by **wind** or not.

**P.   Fungus** means any of a major group (fungi) of saprophytic and parasitic lower plants that lack chlorophyll and include but are not limited to molds, rusts, mildews, smuts, mushrooms, and yeasts, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**Q.   Hail** means precipitation composed of concentric layers of clear ice and hardened snow in the shape of stones ranging in size from pea to softball or larger.

**R.   Limit(s) of liability** means the maximum amount **we** will pay for a **covered loss**.

**S.   Media** means the medium on which **data** or **software** is stored, such as magnetic tape, perforated paper tape, punch cards, media cards, discs, drums, and other storage devices used in **your data processing equipment**.

**T.   Miscellaneous location(s)** means a location other than:

    **1.**   A **covered location**;

    **2.**   A **new location**;

    **3.**   An **unscheduled location**;

    **4.**   A location where **covered property** is at an exhibition, exposition, fair or trade show; or

    **5.**   A location for which coverage is found, in whole or in part, elsewhere in this policy including any coverage under errors and omissions.

**Policy 48**

## DEFINITIONS (Continued)

**U.** **Mobile equipment or tools** means **your** machinery and equipment principally used by **you** or **your** employees away from a **covered location**, including:

**1.** Tools, whether powered or not; and

**2.** Machinery and equipment that is attached to a vehicle licensed for highway use.

**Mobile equipment or tools** does not, however, include vehicles licensed for highway use.

**V.** **Named Storm** means any storm or weather disturbance that is named by the U.S. National Weather Service. All damage resulting from a single **named storm** that occurs within a continuous seventy-two (72) hour period will be considered a single **occurrence**.

**W.** **New location(s)** means **real property you** purchase or rent, including **personal property** at that location, after the **effective date** of this policy.

**X.** **New Madrid** means the Counties and Independent Cities in the States as follows:

Clay, Craighead, Crittenden, Cross, Greene, Independence, Jackson, Lawrence, Lee, Mississippi, Monroe, Phillips, Poinsett, Randolph, St Francis, White, and Woodruff Counties in the State of Arkansas;

Alexander, Franklin, Gallatin, Hamilton, Hardin, Jackson, Johnson, Massac, Perry, Pope, Pulaski, Randolph, Saline, Union, and Williamson Counties in the State of Illinois;

Ballard, Calloway, Carlisle, Crittenden, Fulton, Graves, Hickman, Livingston, Lyon, Marshall, and Mccracken Counties in the State of Kentucky;

Desoto, Marshall, Tate, and Tunica Counties in the State of Mississippi;

Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Iron, Jefferson, Madison, Mississippi, New Madrid, Perry, Pemiscot, Reynolds, Ripley, St Charles, St Francois, St Louis, Ste Genevieve, Scott, Stoddard, and Wayne Counties and the Independent City of St. Louis in the State of Missouri;

Crockett, Dyer, Fayett, Gibson, Hardeman, Haywood, Henry, Lake, Lauderdale, Madison, Obion, Shelby, Tipton, and Weakley Counties in the State of Tennessee.

**Y.** **Object(s)** means the following:

**1.** Unless specified otherwise in an endorsement to this policy:

    **a.** Equipment at a **covered location** that generates, transmits or utilizes energy including electronic communications and **data processing equipment**.

    **b.** Equipment at a **covered location** which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

**2.** **Object(s)** does not include any of the following:

    **a.** Structure, including but not limited to the structural portions of buildings and towers, scaffolding, and any air supported structure;

    **b.** Foundation;

## DEFINITIONS (Continued)

    **c.**  Cabinet, compartment, conduit or ductwork;

    **d.**  Insulating or refractory material;

    **e.**  Buried vessels or piping;

    **f.**  Waste, drainage or sewer piping;

    **g.**  Piping, valves or fittings forming a part of a sprinkler or fire suppression system;

    **h.**  Water piping that is not part of a closed loop used to conduct heat or cooling from a boiler of refrigeration or air conditioning system;

    **i.**  Vehicle or any equipment mounted on a vehicle;

    **j.**  Satellite, spacecraft, or any equipment mounted on a satellite or spacecraft;

    **k.**  Dragline, excavation or construction equipment;

    **l.**  Equipment manufactured by **you** for sale; or

    **m.**  **Data**.

**Z.**  **Occurrence** means all loss or damage attributable directly or indirectly to one (1) cause or series of similar causes.  All such loss or damage will be added together, and the total loss or damage will be treated as one (1) **occurrence** irrespective of the amount of time or area over which such loss or damage occurs.

**A.A.**  **Perils insured against** means causes of loss for which this policy provides coverage.

**B.B.**  **Period of restoration** means;

    **1.**  For buildings and equipment, the period of time

        **a.**  starts at the time of a **covered loss** and,

        **b.**  ends when using reasonable speed the building and equipment could be:

            **(1)**  repaired or replaced; and

            **(2)**  made ready for operations;

    under the same or equivalent physical and operating conditions that existed prior to the damage.

    **2.**  For buildings in the course of construction:

        **a.**  **We** will apply the time period defined in **B.B. 1.** above to the level of business that would have been reasonably achieved after construction and startup would have been completedhad no physical damage happened; and

        **b.**  **We** will give consideration to the actual experience of the business after completion of the construction and startup.

**Policy 50**

## DEFINITIONS (Continued)

3. For stock in-process and mercantile stock, including finished goods not manufactured by **you**, the time required using reasonable speed:

   a. To restore stock in process to the same state of manufacture which existed at the beginning of the interruption of production or suspension of business operations or services; and

   b. To replace physically damaged mercantile stock.

4. For raw materials and supplies, the period of time:

   a. Of actual interruption of production or suspension of operation or services which results from **your** inability to obtain suitable replacement raw materials and supplies; but

   b. Limited to that period for which the damaged raw materials and supplies would have satisfied operating needs.

5. For **valuable papers and records**, the time required using reasonable speed to copy the physically damaged **valuable papers and records** from backup or from originals of a previous generation. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

6. For **data**, programs, or other **software**, the time required using reasonable speed to restore the physically damaged or destroyed **data**, programs, or other **software** from backup. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

7. The **period of restoration** does not include any additional time due to **your** inability to resume operations for any other reason, including but not limited to:

   a. Making changes to equipment.

   b. Making changes to the buildings, or structures, except as provided in the Demolition Cost, Increased Construction Cost and Operation of Building Laws provision, if a **limit of liability** is shown in **E. 4. b.**, **E. 4. c.** or **E. 4. d.** of the DECLARATIONS, Form RM1000, attached to this policy.

   c. Restaffing or retraining employees.

   d. Any law or ordinance that requires testing, monitoring, clean up, removal, decontamination, treatment, detoxification or neutralization of, or any other response to **pollution** or **pollutant(s)**.

8. The expiration of this policy will not terminate the **period of restoration**. In no event will the **period of restoration** exceed twenty-four (24) months from the date of loss.

**C.C.**   **Perishable goods** means any **covered property** subject to deterioration or impairment as a result of a change in conditions including but not limited to temperature, humidity or pressure.

**D.D.**   **Personal property** means **your** tangible things, other than **real property**, including improvements and betterments **you** have made in buildings **you** do not own.

**E.E.**   **Personal property of others** means tangible things **you** do not own, other than **real property**, that are:

   1. Sold by **you** that **you** agreed, prior to loss, to insure for the account of the purchaser during delivery;

   2. In **your** custody which **you** agreed, prior to loss, to insure; or

## DEFINITIONS (Continued)

3.  In **your** care, custody or control, and for which **you** are legally liable, but only to the extent of **your** insurable interest therein.

**F.F.**  **Policy period** means the time during which insurance is provided by this policy.

**G.G.**  **Pollutant(s)** means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, fiber, smoke, vapor, soot, fumes, acids, alkalis, chemicals, biological, organic or bacterial agents and waste.  "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.  However, **pollutant(s)** does not include ammonia.

**H.H.**  **Pollution** means the presence, discharge, dispersal, seepage, migration, release or escape of any **pollutant(s)**.

**I.I.**  **Puget Sound** means the Counties of Clallam, Island, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston, and Whatcom in the State of Washington.

**J.J.**  **Real property** means buildings and any other structure, including:

1.  Completed additions, extensions, permanent fittings or fixtures;

2.  Machinery and equipment used to service the buildings;

3.  Yard fixtures.

**K.K.**  **Replacement cost** means the cost to replace **covered property**:

1.  With new materials of like kind and quality and used for the same purpose; and

2.  At the location where the loss happened.

But **replacement cost** excludes any increased cost of repair or reconstruction by reason of any law or ordinance regulating construction, repair or use.

**L.L.**  **Second tier wind Counties and Parishes** means the Counties and Parishes in the States as follows:

Clarke, Covington, Escambia, Geneva, Monroe, and Washington Counties in the State of Alabama;

Brantley, Brooks, Bulloch, Charlton, Effingham, Evans, Long, Tattnall, Thomas, and Wayne Counties in the State of Georgia;

Acadia, Assumption, Calcasieu, Iberville, Jefferson Davis, Lafayette, St Charles, St James, St John the Baptist, St Martin, Tangipahoa and Washington Parishes in the State of Louisiana;

George, Pearl River, and Stone Counties in the State of Mississippi;

Bladen, Columbus, Craven, Duplin, Gates, Halifax, Hertford, Jones, Lenoir, Martin, Northampton, Pitt and Sampson Counties in the State of North Carolina;

Bamberg, Berkeley, Dillon, Dorchester, Hampton, Marion and Williamsburg Counties in the State of South Carolina;

Bee, Brooks, Fort Bend, Goliad, Hardin, Harris, Hidalgo, Jackson, Jim Wells, Liberty, Live Oak, Orange, Victoria, and Wharton Counties in the State of Texas.

**M.M.**  **Sinkhole collapse** means loss to **covered property** resulting from the sudden sinking or collapse of any land into naturally occurring underground empty spaces created by the action of water on limestone or similar rock formations.  Coverage for **sinkhole collapse** does not include the cost of filling sinkholes.

## DEFINITIONS (Continued)

**N.N.**   **Software** means programs stored on **media** that instruct **data processing equipment** how to process **data**.

**O.O.**   **Specified perils** means direct physical loss or damage caused by or resulting from:

1. Fire;

2. Lightning;

3. Aircraft;

4. Explosion;

5. Riot;

6. Civil commotion;

7. Smoke;

8. Vehicles;

9. **Wind** or **hail**;

10. Malicious mischief;

11. Leakage or accidental discharge from automatic fire protection system;

12. Collapse.

**P.P.**   **Transit** means the conveyance of **your personal property** within the **policy period** and territory as specified in this policy, from the time it leaves the original point of shipment until it arrives at its intended destination.

This period includes:

1. While the property is in the care, custody or control of hired carriers; and

2. Transfers between conveyances.

**Transit** does not include **personal property** while in the custody of **your** salespeople, or while being conveyed between a **covered location** and the location of an exhibition, exposition, fair or trade show.

Should this policy expire or be canceled after the property leaves the original point of shipment but before it arrives at its intended destination, coverage will continue on this **personal property** until it arrives at its intended destination.

**Q.Q.**   **Unscheduled location(s)** means:

1. **Real property** reported to **us**, but not shown on the Schedule of the DECLARATIONS, Form RM1000, which **you** owned or rented before the **effective date**; and

2. Locations reported to **us**, but not shown on the Schedule of the DECLARATIONS, Form RM1000, at which **you** had **personal property** before the **effective date** other than **new locations**.

**R.R.**   **Valuable papers and records** means written or printed documents or records including books, maps, negatives, drawings, abstracts, deeds, mortgages and manuscripts.

**Policy 53**

## DEFINITIONS (Continued)

**S.S.**   **Volcanic activity** means direct physical loss or damage to **covered property** directly resulting from:

    **1.**   Airborne volcanic blast or shockwave;

    **2.**   Ash, dust or particulate matter; or

    **3.**   Lava flow.

All **volcanic activity** resulting from volcanic eruptions occurring within any one-hundred sixty-eight (168) hour period will constitute a single **occurrence**.

**Volcanic activity** does not include the cost to remove ash, dust or particulate matter that does not cause direct physical damage to **covered property**.

**T.T.**   **We**, **us** and **our(s)** means the company issuing this policy, as shown on the DECLARATIONS, Form RM1000.

**U.U.**   **Wind** means the direct action of the movement of air at any velocity.

**V.V.**   **You** and **your(s)** mean the named insured shown on the DECLARATIONS, Form RM1000.

**Policy 54**

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ADDITIONAL NAMED INSURED

This endorsement modifies insurance provided under the following:

CONDITIONS, Form RM1006

**We** will provide insurance under this policy to each of the persons or organizations shown as an additional named insured on the Schedule of this endorsement.

**We** will adjust any **covered loss** only with **you**.

**You** will pay the premium for the insurance **we** provide to the additional named insureds.  In the event that **you** become bankrupt or insolvent, each additional named insured shall pay the premium for the insurance it receives.

**We** will make **our** payment jointly to **you** and any person or organization shown on the Schedule.

Schedule

| Additional Named Insured | Location |
| --- | --- |
| Per schedule on file with **us** | Per statement of values on file with **us** |
| Welspun Tubular, LLC | |
| Welspun Pipe, Inc. | |
| Welspun Global Trade | |

To the extent **you** are required by contract to provide insurance, **your** affiliated, subsidiary, associated companies or corporations and **your** interest in partnerships and joint ventures as now exist or may hereafter be constituted or acquired.

Copyright 2004, Liberty Mutual Group of Companies - all rights reserved.

RM1100 01-04                                                                                                                   Page  1  of  1

**Policy 55**

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES

| Location | Description of Property | Name and Address of Mortgage Holder or Loss Payee | Interests ("M" for Mortgage Holder) ("LP" for Loss Payee) |
|---|---|---|---|

Per schedule or certificates of insurance on file with **us**

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1102 03-08

**Policy 56**

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MOBILE EQUIPMENT OR TOOLS EXTENSION

This endorsement modifies insurance provided under the following:

PROPERTY NOT COVERED, Form RM1004

1. **We** will pay for loss to **your mobile equipment or tools** resulting from a **peril insured against** while away from a **covered location** subject to the following:

2. **We** will not pay more than:

   **A.** The **limits of liability** shown on the Schedule of this endorsement;

   **B.** $ 200,000 on any one (1) item or piece of *newly acquired mobile equipment or tools* **you** own; or

   **C.** $ 100,000 on any one (1) item or piece of **mobile equipment or tools** leased or rented by **you**.

   **We** will not pay more than $ 4,500,000 in any one (1) **occurrence**.

3. **We** will not pay unless a **covered loss** exceeds:

   (X) Straight Deductible:

   $10,000. **We** will then pay the amount of loss in excess of the deductible, up to the applicable **limit of liability**.

   ( ) Percentage Deductible:

   N/A percent of the reported values applicable to the lost or damaged **mobile equipment or tools**. This percentage deductible will not be less than $ Not Applicable or more than $ Not Applicable in any one (1) **occurrence**. **We** will then pay the amount of loss in excess of the deductible, up to the applicable **limit of liability**.

4. **You** will keep a record of all *newly acquired mobile equipment or tools* bought during the **policy period** including the value of the equipment and the date it was purchased. **You** will also provide changes in the values of equipment currently insured, and in the case of leased or rented equipment, the total annual *cost of hire*. **You** will report this information to **us** at the time **you** report the values at risk, or at expiration or cancellation of this policy, whichever occurs first.

   A premium charge will be made unless waived by **us**.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

**Policy 57**

## MOBILE EQUIPMENT OR TOOLS EXTENSION  (Continued)

5.  For the purpose of coverage provided by this endorsement the *italicized* term:

   A.  *Cost of hire* means only the actual cost of renting equipment.  It does not include the cost of operators furnished with the equipment.

   B.  *Newly acquired mobile equipment or tools* means **mobile equipment or tools you** buy after the **effective date** of this endorsement.

6.  If marked with an "X" **covered loss** to **mobile equipment or tools** provided by this endorsement will be valued at the time and place of loss at **replacement cost**:

   ( )  **Replacement Cost**


Schedule

| Description of **Mobile Equipment or Tools** | Manufacturer | Serial No. | Limit of Liability |
|---|---|---|---|
| Per schedule of mobile equipment and tools on file with **us**. | | | $4,500,000 |

**Policy 58**

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EARTH MOVEMENT COVERAGE

This endorsement modifies insurance provided under the following:

        EXCLUSIONS, Form RM1003

1. **We** will pay for direct physical loss or damage to **covered property** caused by sudden **earth movement** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

   In addition, if coverage is provided for **business income** or **extra expense** in **B.** Coverages of the DECLARATIONS, Form RM1000, **we** will pay for covered loss of **business income** or **extra expense** that results from direct physical loss or damage to **covered property** caused by sudden **earth movement** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

   If **your** policy includes EARTH MOVEMENT SPRINKLER LEAKAGE EXTENSION, Form RM1105, there is no coverage in this endorsement for any loss or damage (including any coverage for **business income** or **extra expense**) resulting from leakage of an automatic fire extinguishing system caused by sudden **earth movement** (see Form RM1105 for any coverage for such loss or damage).

   All **earth movement**, including any earthquake shocks, within a continuous seventy-two (72) hour period will be considered a single **occurrence**.  The expiration of this policy will not reduce this seventy-two (72) hour period.

2. **Limit of Liability**

   The following **limits of liability** do not increase and are not in addition to any other applicable **limit of liability**.

   **A.** The most **we** will pay for all loss or damage, including any loss of **business income** or **extra expense**, for each **occurrence** of sudden **earth movement** loss will be the lesser of the applicable **limit of liability** shown on:

       **(1)** The DECLARATIONS, Form RM1000;

       **(2)** EXTENSIONS OF COVERAGE, Form RM1002;

       **(3)** The Schedule of this endorsement for that particular state or the particular location(s); or

       **(4)** Any other applicable endorsement to this policy.

   **B.** The most **we** will pay for all loss or damage caused by all sudden **earth movement**, including any loss of **business income** or **extra expense**, during any one (1) policy year is $25,000,000.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1106 03-08                                                                                                          Page  1  of  4

## EARTH MOVEMENT COVERAGE (Continued)

3.  Deductible Amount

    A.  **We** will not pay for a sudden **earth movement** loss until the loss exceeds either the applicable flat amount deductible or percentage deductible shown for that particular state or the particular location(s) shown on the Schedule of this endorsement. **We** will then pay the amount of loss in excess of the applicable deductible, up to the applicable **limit of liability**.

    B.  If a percentage deductible is shown on the Schedule of this endorsement, the deductible amount will be determined as follows:

        **We** will not pay for an **earth movement** loss until the loss exceeds the greater of:

        (1)  The sum of multiplying the deductible factor shown on the Schedule of this endorsement for a particular state or location(s) times:

            a.  the total reported values on file with **us** for the **covered property** at the **covered location** when and where the loss occurred; plus

            b.  the full annual **business income** value which **you** would have earned in the twelve (12) month period following the loss had no loss occurred; or

        (2)  The corresponding minimum deductible amount also shown for that particular state or the particular location(s).

        **We** will then pay the amount of the loss in excess of the greater of these two (2) amounts up to the applicable **limit of liability**.

    C.  These deductibles do not apply to **covered property** in **transit**.

    D.  If indicated by an asterisk (*) after the deductible amount, a separate deductible amount will apply to any **covered property**, loss of **business income**, **extra expense**, or any other coverage or peril listed on the Schedule of this endorsement.

4.  This endorsement does not apply to, and no **earth movement** coverage is provided for, the following coverage(s):

    Form RM1002, Errors and Omissions
    Form RM1110, Interruption of Services Coverage Extension
    Form RM1002, Miscellaneous Locations
    Form RM1002, New Locations

## EARTH MOVEMENT COVERAGE (Continued)

**5.** This endorsement does not apply to, and no **earth movement** coverage is provided for, any **covered property** situated in or at the following state(s) and location(s):

When indicated with an (X), **covered property** at any location situated in:

**A.** (X) The State of Alaska;

**B.** (X) The State of California;

**C.** (X) The State of Hawaii;

**D.** (X) The State of Nevada;

**E.** (X) The area defined in this policy as **New Madrid**;

**F.** (X) The area defined in this policy as **Puget Sound**;

**G.** (X) The Commonwealth of Puerto Rico; and

**H.** ( ) Any other location(s) shown below:

<u>Location</u>

Not Applicable

Refer to the last page of this endorsement for the Schedule of States and Locations for which **earth movement** coverage is provided by this policy.

## EARTH MOVEMENT COVERAGE  (Continued)

Schedule of States and Locations

| State or Location | Limit of Liability per **occurrence** | Limit of Liability in any one (1) policy year | Deductible Amount |
|---|---|---|---|
| Locations not situated in the areas defined on the schedule of states and locations in Item 5 of this endorsement. | $25,000,000 | $25,000,000 | $100,000 |

RM1106 03-08

**Policy 62**

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## FLOOD COVERAGE

This endorsement modifies insurance provided under the following:

       EXCLUSIONS, Form RM1003

1.  **We** will pay for direct physical loss or damage to **covered property** caused by **flood** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

    In addition, if coverage is provided for **business income** or **extra expense** in **B.** Coverages of the DECLARATIONS, Form RM1000, **we** will pay for covered loss of **business income** or **extra expense** that results from direct physical loss or damage to **covered property** caused by **flood** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

    All **flood** losses within a continuous seventy-two (72) hour period will be considered a single **occurrence.**  The expiration of this policy will not reduce this seventy-two (72) hour period.

2.  **Limit of Liability**

    The following **limits of liability** do not increase and are not in addition to any other applicable **limit of liability.**

    **A.**  The most **we** will pay for all loss or damage, including any loss of **business income** or **extra expense**, for each **occurrence** of **flood** loss within a state(s) or at a location(s) shown on the Schedule of this endorsement will be the lesser of the applicable **limit of liability** shown on:

    **(1)**  The DECLARATIONS, Form RM1000;

    **(2)**  EXTENSIONS OF COVERAGE, Form RM1002;

    **(3)**  The Schedule of this endorsement for that particular state or the particular location(s); or

    **(4)**  Any other applicable endorsement to this policy.

    **B.**  The most **we** will pay for all loss or damage caused by **flood**, including any loss of **business income** or **extra expense**, during any one (1) policy year is $25,000,000.

3.  Deductible Amount

    **A.**  **We** will not pay for a **flood** loss until the loss exceeds either the applicable flat amount deductible or percentage deductible shown for that particular state or the particular location(s) shown on the Schedule of this endorsement.  **We** will then pay the amount of loss in excess of the applicable deductible, up to the applicable **limit of liability.**

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

**Policy 63**

## FLOOD COVERAGE (Continued)

**B.** If a percentage deductible is shown on the Schedule of this endorsement, the deductible amount will be determined as follows:

**We** will not pay for a **flood** loss until the loss exceeds the greater of:

**(1)** The sum of multiplying the deductible factor shown on the Schedule of this endorsement for a particular state or location(s) times:

    **a.** the total reported values on file with **us** for the **covered property** at the **covered location** when and where the loss occurred; plus

    **b.** the full annual **business income** value which **you** would have earned in the twelve (12) month period following the loss had no loss occurred; or

**(2)** The corresponding minimum deductible amount also shown for that particular state or the particular location(s).

**We** will then pay the amount of the loss in excess of the greater of these two (2) amounts up to the applicable **limit of liability**.

**C.** These deductibles do not apply to **covered property** in **transit**.

**D.** If indicated by an asterisk (*) after the deductible amount, a separate deductible amount will apply to any **covered property**, loss of **business income**, **extra expense**, or any other coverage or peril listed on the Schedule of this endorsement.

**4.** This endorsement does not apply to, and no **flood** coverage is provided for, the following coverage(s):

Form RM1002, Errors and Omissions
Form RM1110, Interruption of Services Coverage Extension
Form RM1002, Miscellaneous Locations
Form RM1002, New Locations

**5.** This endorsement does not apply to, and no **flood** coverage is provided for, any **covered property** situated in or at the following state(s) and location(s):

Not Applicable

Refer to the last page of this endorsement for the Schedule of States and Locations for which **flood** coverage is provided by this policy.

## FLOOD COVERAGE (Continued)

### Schedule of States and Locations

| Loc. No. | State or Location | Limit of Liability per occurrence | Limit of Liability in any one (1) policy year | Deductible Amount |
|---|---|---|---|---|
| | Subject to Paragraphs 1-5 of this endorsement, unless a different **limit of liability** applies for any reason (including any **limits of liability** listed below), this is the **limit of liability** for all direct physical loss or damage to **covered property** caused by **flood** (including any resulting loss of **business income** or **extra expense** if those coverages are provided in **B.** Coverages of DECLARATIONS, Form RM1000) | $25,000,000 | $25,000,000 | $100,000 |

RM1108 03-08

**Policy 65**

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INTERRUPTION OF SERVICES COVERAGE EXTENSION

This endorsement modifies insurance provided under the following:

> EXTENSIONS OF COVERAGE, Form RM1002
> EXCLUSIONS, Form RM1003

1.  **We** will pay for physical loss or damage to **covered property**, loss of **business income** and **extra expense** resulting from an interruption of the electrical, heating, air conditioning, refrigeration, telecommunication, steam, water, sewer or fuel service to a location shown on the Schedule of this endorsement, but only if the interruption of service results:

    A.  From physical damage by a **peril insured against**;

    B.  Away from a location shown on the Schedule of this endorsement;

    C.  To the following, if marked with an "X", that directly supply service to the location shown on the Schedule of this endorsement and are either owned, managed or controlled by a company with a contract to supply these services to that location, or are located within one (1) mile of that location:

        (1) (X) Any electrical generating plant, substation, power switching station, transformer, gas compressor station, telephone switching facility, water or sewer treatment plant or any other plant or facility responsible for providing the services specified in **1.** above;

        (2) (X) Transmission and distribution lines, connections or supply pipes which furnish electricity, steam, gas, refrigeration, telecommunication, water or sewer (other than overhead transmission and distribution lines);

        (3) ( ) Overhead transmission and distribution lines.

2.  **We** will not pay for any physical loss or damage to **covered property**, loss of **business income** or **extra expense** due to any interruption of service from:

    A.  A satellite, regardless of cause; or

    B.  The operation of any breaker, switch, device or system designed to preserve or protect any property or system integrity; or

    C.  Any misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting, cleaning, or the performance of maintenance.

3.  Conditions

    A.  This extension applies only to the Coverages marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

**Policy 66**

## INTERRUPTION OF SERVICES COVERAGE EXTENSION (Continued)

**B.**   This extension, however, does not apply to, and no coverage is provided in conjunction with, Standard Extension of Coverage **A. 7.** Extended **Period of Restoration**, EXTENSIONS OF COVERAGE, Form RM1002, with respect to any loss of **business income** covered solely under this endorsement.

**4.   Limit of Liability**

**We** will not pay more than the applicable **limit of liability** shown on the Schedule of this endorsement for any one (1) **occurrence**.  This **limit of liability** does not increase and is not in addition to any other applicable **limit of liability**.

**5.**   Waiting Period

If an interruption of service waiting period is shown below or on the Schedule of this endorsement, **we** will only pay for loss of **business income**, **extra expense** or for **perishable goods** if the interruption exceeds the specified waiting period.  Once the waiting period is met coverage will commence at the initial time of the interruption, and will be subject to any deductible shown in **6.** below or on the Schedule of this endorsement.

The following interruption of service waiting period(s) apply:

**A.**   Equipment Breakdown                              24 Hours

**B.**   All Coverages Except Equipment Breakdown         24 Hours

**6.**   Deductible

If the interruption of service exceeds the waiting periods in **5.**, the following deductibles apply to any loss covered under this endorsement unless otherwise shown on the Schedule of this endorsement.

**A.**   Equipment Breakdown

Deductible(s) as specified in **G. 3. a.** and **G. 3. b.** on the DECLARATIONS, Form RM1000, or on the ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

**B.**   All Coverages Except Equipment Breakdown

**(1)**   **We** will not pay unless a loss covered under this endorsement exceeds $10,000.  **We** will then pay only the amount of loss in excess of this deductible, up to the applicable **limit of liability**.

If a separate deductible is shown below, the foregoing dollar amount deductible does not apply to the loss of **business income** or **extra expense** portion of the loss covered under this endorsement, which will be subject to the following deductible.

**(2)**   Unless otherwise shown on the Schedule of this endorsement, **we** will not pay for loss of **business income** or **extra expense** until an interruption of service exceeds a time period of Not Applicable immediately following the loss covered under this endorsement.  **We** will then pay only the amount of loss sustained after this period of time, up to the **limit of liability** specified.

For a time deductible shown as days, each day consists of twenty-four (24) consecutive hours.

When an asterisk (*) follows one (1) or more of the applicable deductible amounts described on the Schedule of this endorsement or any other endorsement to this policy, the amounts shown will be applied separately, and are in addition to any other applicable deductible(s).

**7.**   Refer to the last page of this endorsement for the Schedule of location(s) for which interruption of services coverage is provided by this policy.

**Policy 67**

**INTERRUPTION OF SERVICES COVERAGE EXTENSION (Continued)**

Schedule

| Location(s), Coverage(s), Additional Deductible(s) or Waiting Periods | **Limit of Liability** or Deductible(s) |
|---|---|
| **A.** Locations<br>All covered locations except as indicated in B., C., and D. below. | $1,000,000 |
| **B.** Coverages | |
| **C.** Additional Deductibles or Waiting Periods | |
| **D.** Other | |

**Policy 68**

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PAYROLL EXPENSE LIMITATION OR EXCLUSION

This endorsement modifies insurance provided under the following:

COVERAGES, Form RM1001

1. **We** will pay **your** *payroll expenses* due to a **business income** loss resulting from necessary interruption of **your** business by a **peril insured against**, up to the number of business days shown on the Schedule of this endorsement.

2. For the purpose of this endorsement the italicized term *payroll expenses* means the *payroll expense* for all of **your** employees except:

    **A.**  Officers;

    **B.**  Executives;

    **C.**  Department managers; and

    **D.**  Employees under contract whose services must necessarily continue; and

    *Payroll expense* includes:

    **(1)**  Payroll, including taxes and charges dependant on the payment of wages;

    **(2)**  Employee benefits, if directly related to payroll;

    **(3)**  FICA payments **you** pay;

    **(4)**  Union dues **you** pay; and

    **(5)**  Workers compensation premiums.

Schedule

(X) *Payroll expense* excluded.

( ) Limited *payroll expense*:

      Number of business days:  NA

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

**Policy 69**

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ADDITIONAL DEDUCTIBLES AND WAITING PERIODS

This endorsement modifies insurance provided under the following:

DECLARATIONS, Form RM1000

**A.**  If **G. 2.** or **G. 3. d.** on Form RM1000 is marked with an (X), the deductibles and waiting periods for the coverages described on the Schedule of this endorsement apply.  If not shown on the Schedule of this endorsement the deductibles and waiting periods for all other coverages remain unchanged.

**B.**  If a **covered loss** involves two (2) or more deductibles, **we** will use no more than the largest of the applicable deductibles unless otherwise provided below.

**C.**  When an asterisk (*) follows one (1) or more of the deductible amounts described on the Schedule of this endorsement, the amounts shown will be applied separately, and are in addition to any other applicable deductible(s).

Schedule

Description of Coverage Deductible or Waiting Period                                           Amount of Deductible and
                                                                                                                         Waiting Period

**Wind** associated with a **Named Storm** (Deductible)

**A.**  All loss or damage to **covered property** caused by or resulting from **wind** associated with a **Named Storm** will be subject to the deductible obtained by adding up all of the following with respect to the deductible factors/amounts listed in Paragraph **C.** below:

  **1.**  the sum of all applicable percentage deductible factors, calculated as described in Paragraph **B.** below, subject to any applicable minimums or maximums; and

  **2.**  Any applicable flat deductible amounts.

**B.**  To determine the amount to be used in Paragraph **A.** for any percentage deductible factors provided in Paragraph **C.**, multiply the applicable percentage shown by:

  **1.**  the total reported values on file with **us** for the **covered property** at the corresponding location(s) (including sub-locations) where the loss occurred; plus

  **2.**  the full annual loss of **business income** value which **you** would have earned for the corresponding location (including sub-locations) where the loss occurred in the twelve (12) month period following the loss had no loss occurred.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

**Policy 70**

## ADDITIONAL DEDUCTIBLES AND WAITING PERIODS (continued)

Schedule

| Description of Coverage Deductible or Waiting Period | Amount of Deductible and Waiting Period |
|---|---|

**C.** The following are the deductible factors/amounts to be used for purposes of calculating the **wind** associated with a **Named Storm** deductible. If a location (including its sub locations) falls into two or more of the following categories, the category that more specifically identifies that location will be the only one that applies to that location for purposes of calculating its portion of the **wind** associated with a **Named Storm** deductible:

| Categories (by Group(s), Region(s), State(s), County(ies), Location(s)) | Deductible Factors/Amounts |
|---|---|
| **First tier wind Counties and Parishes;** and Harris County, TX | 2% subject to $100,000 minimum |
| Florida; Hawaiian Islands; and Puerto Rico | 5% subject to $250,000 minimum |

**D.** The foregoing **wind** associated with a **Named Storm** deductible is a single deductible, even if multiple percentages, minimums or flat deductible factors/amounts apply.

Leased or Rented Mobile Equipment or Tools

| | |
|---|---|
| Leased or Rented Mobile Equipment or Tools | $10,000 |

Mobile Equipment or Tools

| | |
|---|---|
| Mobile Equipment or Tools | $10,000 |

Newly Acquired Mobile Equipment or Tools

| | |
|---|---|
| Newly Acquired Mobile Equipment or Tools | $10,000 |

Equipment Breakdown

If one (1) or more deductible amounts are shown below, each will be applied separately, however for each listed Coverage Category with multiple deductible amounts **we** will use no more than the largest applicable deductible amount for that Coverage Category:

Deductible Amount(s) by Coverage Category

| | |
|---|---|
| Equipment Breakdown - Covered Objects | $10,000 except Production Machinery - $25,000* |
| Equipment Breakdown - Loss of **Business Income** and Equipment Breakdown - **Extra Expense** | 5 x ADV |

Waiting Period(s)

**We** will not pay for loss of **business income**, **extra expense**, or, to the extent **perishable goods** coverage is provided in EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE, Form RM1250, unless a covered equipment breakdown loss from any one (1) **accident** to an **object** exceeds a waiting period of Not Applicable hours.

Once the waiting period has been exceeded, coverage will begin at the initial time of the interruption, and will be subject to the deductibles specified above.

**Policy 71**

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## STANDARD EXTENSIONS AMENDATORY

This endorsement modifies insurance provided under the following:

EXTENSIONS OF COVERAGE, Form RM1002

The following Standard Extensions of Coverage are amended as shown below when marked with an "X":

Standard Extensions of Coverage

1.  ( )  Accounts Receivable

    **Our** sublimit under **A. 1. a.** Accounts Receivable is increased from $100,000 to $Not Applicable.

2.  ( )  Arson Reward

    **Our** sublimit under **A. 2.** Arson Reward is increased from $25,000 to $Not Applicable.

3.  ( )  Computer Virus and Denial of Access

    **Our** sublimit under **A. 3.** Computer Virus and Denial of Access is increased from $25,000 to $Not Applicable.

4.  (X) Debris Removal Expense

    **A.  Our** sublimit under **A. 4. b.** Debris Removal Expense is increased from $250,000 to $5,000,000.

    **B.  A. 4. c.** Debris Removal Expense is deleted and replaced by the following:

    c.  **We** will pay up to $25,000 for expenses to remove from a **covered location**, windblown debris of property not covered by this policy.

5.  ( )  Deferred Payments

    **Our** sublimit under **A. 5. a.** Deferred Payments is increased from $25,000 to $Not Applicable.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1119 03-08                                                                                                    Page  1  of  2

**Policy 72**

## STANDARD EXTENSIONS AMENDATORY (Continued)

6. ( )Extended **Period of Restoration**

 **A. 7. a.** Extended **Period of Restoration** is amended to NA days in lieu of sixty (60) days.

7. ( )**Fine Arts**

 **Our** sublimit under **A. 9. Fine Arts** is increased from $100,000 to $Not Applicable.

8. ( )**Fungus** Cleanup Expense

 **Our** sublimit under **A. 10. b. Fungus** Cleanup Expense is increased from $250,000 to $Not Applicable.

9. ( )Installation of **Personal Property** or **Personal Property of Others**

 **Our** sublimit under **A. 11.** Installation of **Personal Property** or **Personal Property of Others** is increased from $250,000 to $Not Applicable.

10. ( ) Lock and Key Replacement

 **Our** sublimit under **A. 12. b.** Lock and Key Replacement is increased from $25,000 to $Not Applicable.

11. ( ) Plants, Trees or Shrubs

 **Our** sublimit under **A. 14.** Plants, Trees or Shrubs is increased from $100,000 to $Not Applicable.

12. ( ) **Pollution** Cleanup Expense

 **A.  Our** annual aggregate **limit of liability** under **A. 15. b. Pollution** Cleanup Expense is increased from $25,000 to $Not Applicable.

 **B.  Our** annual aggregate **limit of liability** under **A. 15. c. Pollution** Cleanup Expense is increased from $25,000 to $Not Applicable.

13. ( ) Professional Fees

 **Our** sublimit under **A. 16. a.** Professional Fees is increased from $25,000 to $Not Applicable.

14. ( ) Removal

 **A. 17. b. (1)** Removal is deleted and replaced by the following:

 **(1)** For up to NA days at each place to which the property has been taken for preservation;

**Policy 73**

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CAP ON LOSSES FROM CERTIFIED ACT(S) OF TERRORISM**

This endorsement modifies insurance provided under the following:

> EXCLUSIONS, Form RM1003
> DEFINITIONS, Form RM1007

1.  Definition of *Certified Act(s) of Terrorism*

    For the purpose of this endorsement, the italicized phrase *certified act(s) of terrorism* means one (1) or more acts certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be terrorism pursuant to the federal Terrorism Risk Insurance Act, including all amendments (hereafter "TRIA").  The criteria contained in TRIA for *certified act(s) of terrorism* include the following:

    **A.**   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

    **B.**   The act is a violent act or an act that is dangerous to human life, property or infrastructure, and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2.  Cap on Losses From *Certified Act(s) of Terrorism*

    If aggregate insured losses attributable to *certified act(s) of terrorism*:

    **A.**   exceed $100 billion in a program year (January 1 through December 31); and

    **B.**   **we** have met **our** deductible under the Act;

    neither **we** nor the Secretary of the Treasury shall be liable for the payment of any portion of the amount of such losses that exceeds the $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

3.  Application of Exclusions

    The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded by this policy, such as losses under **GROUP A** exclusions **A. 1.** and **A. 8.** on EXCLUSIONS, Form RM1003 attached to this policy.

Includes copyrighted material of Insurance Service Office, Inc., with its permission.

RM1144R1 03-08                                                                                         Page  1  of  1

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE

This endorsement modifies insurance provided under the following:

> COVERAGES, Form RM1001

1.  If coverage for Equipment Breakdown is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, **we** will pay up to the sublimit of liability shown for each of the extensions described below.

    These extensions of coverage do not increase the **limit of liability** under this coverage.

    **A.** Expediting Expenses Coverage

    **We** will pay up to a sublimit of $100,000 for the reasonable extra costs of temporary repair to property or of expediting the permanent repair or replacement of the property, whichever is less.  Expenses **we** will cover include overtime wages and extra costs for rapid means of transportation.

    **We** will not cover expenses for temporary rental of property or temporary replacement of damaged property under this extension of coverage.  **We** will pay only for expediting expenses caused by an **accident** to an **object**.

    **B.** *Hazardous Substances* Coverage

    **We** will pay up to a sublimit of $100,000 for **extra expenses** to clean up, repair, replace or dispose of property that is damaged, contaminated or polluted by a *hazardous substance*.  The damage, contamination or **pollution** must result from an **accident** to an **object**.

    As used here, **extra expenses** will mean expenses incurred beyond those for which **we** would have been liable if no *hazardous substance* had been involved.

    **C.  Perishable Goods** Coverage

    **(1) We** will pay up to a sublimit of $100,000 for:

        **a.**  physical damage to **perishable goods** due to spoilage;

        **b.**  physical damage to **perishable goods** due to contamination from the release of refrigerant, including but not limited to ammonia;

        **c.**  any necessary expenses **you** incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

**Policy 75**

## EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE (Continued)

    **(2)** If **you** are unable to replace the **perishable goods** before its anticipated sale, the amount of **our** payment will be determined on the basis of the sales price of the **perishable goods** at the time of the **accident**, less discounts and expenses **you** otherwise would have had.  Otherwise **our** payment will be determined in accordance with the valuations endorsement.

    **(3)** As used here, **covered property** does not include animals.

**D.** Data Restoration

    **We** will pay up to a sublimit of $100,000 for **your** reasonable and necessary cost to research, replace and restore lost **data**.

**2.** If coverage for Equipment Breakdown is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, the coverage provided by this policy is extended as follows:

**A.** Water Damage Coverage

    **We** will pay for loss to property, including the cost of salvage, caused by water, if such damage results from an **accident** to an **object**.

**B.** CFC Refrigerants

    **We** will pay for the additional cost to repair or replace **covered property** because of the use or presence of a refrigerant containing CFC (chlorinated fluorocarbon) substances.  This means the **extra expense** to do the least expensive of the following:

    **(1)** Repair the damaged property and replace any lost CFC refrigerant;

    **(2)** Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

    **(3)** Replace the system with one (1) using a non-CFC refrigerant.

    Additional costs mean those beyond what would have been required had no CFC refrigerant been involved.

    **We** will also pay for the additional loss as described in loss of **business income** and **extra expense** coverages caused by such loss, if these coverages are indicated in the DECLARATIONS, Form RM1000.

**3.** For the purpose of this endorsement the italicized term *hazardous substance* means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

RM1250 03-08

**Policy 76**

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADDITIONAL TYPES OF PROPERTY NOT COVERED AMENDATORY**

This endorsement modifies insurance provided under the following:

> PROPERTY NOT COVERED, Form RM1004

**We** do not cover loss to the additional types of property described on the Schedule of this endorsement:

Schedule

| Item No. | Description of Property Not Covered |
|---|---|
|  | All Hot Rolled Steel Coils, both raw and finished, considered as inventory at the covered locations on file with **us**. |

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1728 09-08

**Policy 77**

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ARKANSAS CHANGES

This endorsement applies only to **covered property** located in Arkansas, and modifies insurance provided under the following:

        CONDITIONS, Form RM1006

1.    Item **1.** and **3.** of **B.** Appraisal is replaced by the following:

    **B.**  Appraisal

        **1.**  If **you** fail to agree with **us** on the amount of a loss, either party may require that the amount be submitted for appraisal.  However, an appraisal will be made only if both parties agree, voluntarily, to have the loss appraised.  Requests for appraisal will be made in writing.  Each party will then choose a competent independent appraiser.  Each party will notify the other of the identity of its appraiser within sixty (60) days of the written request for appraisal.

        **3.**  The appraisers will then set the amount of the loss.  If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss.  If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire.  Written agreement signed by any two (2) of these three (3) will set the amount of loss.  An appraisal decision will not be binding on the parties involved.

2.    Item **Y.** Suit is replaced with the following:

    **Y.**  Suit

    No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the policy terms and conditions.  Any suit against **us** must be brought within five (5) years after the date on which the direct physical loss or damage occurred.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**TEXAS CHANGES**

This endorsement applies only to **covered property** located in Texas, and modifies insurance provided under the following:

> EXTENSIONS OF COVERAGE, Form RM1002
> CONDITIONS, Form RM1006
> LENDER'S LOSS PAYABLE ENDORSEMENT, Form RM1141

In this endorsement, "business day" means a day other than Saturday, Sunday or holiday recognized by the state of Texas.

1.  The following change is made to Form RM1002:

    Item **6.** of **A.** Standard Extensions of Coverage is replaced with the following:

    **6.**  Duty to Defend

    **a.**  **We** will defend that part of any suit against **you** involving **personal property of others** when all of the following conditions exist:

    **(1)**  The suit seeks payment for physical loss or damage to the **personal property of others**; and

    **(2)**  The physical loss or damage is caused by a **peril insured against**; and

    **(3)**  The physical loss or damage takes place while the **personal property of others** is in **your** custody; and

    **(4)**  The **personal property of others** is the type of property covered by this policy.

    **We** will do so even if such suit is groundless, false or fraudulent, but **we** may, without prejudice, make such investigation, negotiation and settlement of any claim or suit, as **we** deem appropriate.

    **b.**  **We** will notify **you** in writing of any initial offer to compromise or settle a claim brought against **you** as described in **a.** above.  **We** will give **you** the notice within ten (10) days after the date the offer is made.

    **c.**  **We** will notify **you** in writing of any settlement of a claim brought against **you** as described in **a.** above.  **We** will give **you** the notice within thirty (30) days after the settlement.

2.  The following changes are made to Form RM1006:

    **A.**  The following item is added:

    **Section 862.053. Fire Insurance:  Total Loss of Real Property.**  A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of the policy.  This subsection does not apply to **personal property**.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1842 03-11                                                                                                  Page  1  of  4

**Policy 79**

## TEXAS CHANGES (Continued)

**B.** Item **3.** of **M.** is replaced with the following:

**M.** Mortgage Holders

**3.** If **we** deny **your** claim because of **your** acts or because **you** have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment, up to the amount of their insurable interest, but in no event more than the applicable **limit of liability**, if the mortgage holder:

**a.** Pays any premium due under this policy at **our** request;

**b.** Submits a signed, sworn proof of loss within ninety-one (91) days after receiving notice from **us** of **your** failure to do so; and,

**c.** Has notified **us** of any change in ownership, occupancy, or substantial change in risk known to the mortgage holder.

All terms and conditions of this policy will then apply directly to the mortgage holder.

**C.** Item **T.** is replaced with the following:

**T.** **Our** Duties After Loss

**1.** Within fifteen (15) days after **we** receive **your** written notice of claim, **we** must:

**a.** Acknowledge receipt of the claim,

If **our** acknowledgement of the claim is not in writing, **we** will keep a record of the date, method and content of **our** acknowledgement;

**b.** Begin any investigations of the claim;

**c.** Specify the information **you** must provide in accordance with **C.C. Your** Duties After a Loss below.

**We** may request more information, if during the investigation of the claim such additional information is necessary.

**2.** After **we** receive the information **we** request, **we** must notify **you** in writing whether **your** claim will be paid or has been denied or whether more information is needed:

**a.** Within fifteen (15) business days; or

**b.** Within thirty (30) days if **we** have reason to believe the loss resulted from arson.

**3.** If **we** do not approve payment of **your** claim or need more time for processing **your** claim, **we** must:

**a.** Give the reasons for denying **your** claim; or,

**b.** Give the reasons **we** require more time to process **your** claim. But, **we** must either approve or deny **your** claim within forty-five (45) days after requesting more time.

**4.** If **we** notify **you** that **we** will pay **your** claim, or part of **your** claim, **we** must pay within five (5) business days after **we** notify **you**.

**Policy 80**

## TEXAS CHANGES (Continued)

5.  If payment of **your** claim or part of **your** claim requires the performance of an act by **you**, **we** must pay within five (5) business days after the date **you** perform the act.

6.  Catastrophe claims

    If a claim results from a weather related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in Item **T. 1. - T. 5.** above are extended for an additional fifteen (15) days.

    Catastrophe or Major Natural Disaster means a weather related event which is:

    a.  Declared a disaster under the Texas Disaster Act of 1975; or

    b.  Determined to be a catastrophe by the Texas Department of Insurance.

**D.** Item **Y.** is replaced with the following:

**Y.** Legal Action

Legal action may not be brought against **us** by anyone unless:

1.  There has been full compliance with all the terms and conditions of this policy; and

2.  The legal action is taken within two (2) years, one (1) day from the date the cause of action, alleging a breach of contractual duties on **our** part, first accrues.

**E.** Item **10.** of **C.C.** is replaced with the following:

**C.C.**   **Your** Duties After a Loss

10.  Submit to **us**, within ninety-one (91) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

     a.  The time and cause of the loss;

     b.  **Your** interest and the interest of all others in the property involved;

     c.  Any other policies of insurance that may provide coverage for the loss;

     d.  Any changes in title or occupancy of the property during the **policy period** and;

     e.  The amount of **your** claimed loss.

     **You** shall also submit with the Proof of Loss:

     a.  The inventory referred to in **C.C. 6.**;

     b.  The records specified in **C.C. 7.** and **C.C. 8.**;

     c.  Specifications for any damaged building and;

     d.  Detailed estimates and invoices for the repair of any damage.

**Policy 81**

**TEXAS CHANGES (Continued)**

3.   Form RM1141, Item **2. B.** is replaced with the following:

   **B.**   Submits a signed, sworn proof of loss within ninety-one (91) days after receiving notice from **us** of **your** failure to do so;

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**


**TEXAS - EQUIPMENT BREAKDOWN AMENDATORY**


This endorsement applies only to **covered** property located in Texas, and modifies insurance provided under the following:

> COVERAGES, Form RM1001
> CONDITIONS, Form RM1006
> DEFINITIONS, Form RM1007

1.  With respect to Equipment Breakdown Coverage only, the following coverages are added:

Defense

If a claim or **suit** is brought against **you** alleging that **you** are liable for damage to property of another in **your** care, custody or control that was directly caused by an **accident** to an **object** **we** will either:

a.  Settle the claim or **suit**; or

b.  Defend **you** against the claim or **suit** but keep for ourselves the right to settle it at any point.

Supplementary Payments

**We** will pay, with respect to any claim or **suit** **we** defend:

a.  All expenses **we** incur;

b.  The cost of bonds to release attachments, but only for bond amounts within the **limit of liability**.  **We** do not have to furnish these bonds;

c.  All reasonable expenses incurred by **you** at **our** request to assist **us** in the investigation or defense of the claim or **suit**, including actual loss of earnings up to $100 a day because of time off from work;

d.  All costs taxed against **you** in any **suit** **we** defend;

e.  Pre-judgment interest awarded against **you** on that part of the judgment **we** pay.  If **we** make an offer to pay the applicable **limit of liability**, **we** will not pay any pre-judgment interest based on that period of time after the offer; and

f.  All interest on the full amount of any judgment that accrues after entry of the judgment and before **we** have paid, offered to pay, or deposited in court the part of the judgment that is within the **limit of liability** shown on the DECLARATIONS, Form RM1000.

These payments will not reduce the **limit of liability**.


Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

## TEXAS - EQUIPMENT BREAKDOWN AMENDATORY (Continued)

2.  With respect to Equipment Breakdown Coverage only, the following conditions are added:

    a.  Legal Action Against **Us**:

    No one may bring a legal action against **us** under this coverage section unless:

    **(1)** There has been full compliance with all the terms of this coverage section;

    **(2)** The action is brought within two (2) years after the date of the **accident**; and

    **(3)** **We** agree in writing that **you** have an obligation to pay for damage to **covered property** of others or until the amount of that obligation has been determined by final judgment or arbitration award.  No one has the right under this policy to bring **us** into an action to determine **your** liability.

    b.  Bankruptcy

    The bankruptcy or insolvency of **you** or **your** estate will not relieve **us** of an obligation under this coverage section.

3.  With respect to Equipment Breakdown Coverage only, the following Definition is added:

    **Suit** means a civil proceeding and includes:

    a.  An arbitration proceeding in which damages are claimed and to which **you** must submit or do submit with **our** consent; or

    b.  Any other alternative dispute resolution proceeding in which damages are claimed and to which **you** submit with **our** consent.

Policy number YU2-L9L-453570-011

This endorsement is effective 12/31/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

        CONDITIONS, Form RM1006

1.  Item **3.** of **F.** Cancellation is replaced with the following:

    **3.**  If this policy has been in effect for sixty (60) days or more or is a renewal of a policy **we** issued, **we** may cancel this policy by giving **you** and any lien holder or loss payee named in the policy written notice of cancellation at least:

        **a.**  Ten (10) days before the date of cancellation if **we** cancel for nonpayment of premium;

        **b.**  Sixty (60) days before the date of cancellation if **we** cancel for one (1) or more of the following reasons:

            **(1)**  Discovery of fraud or material misrepresentation by **you** in obtaining this policy or in pursuing a claim under this policy;

            **(2)**  The occurrence of a material change in the risk that substantially increases any hazard insured against under this policy;

            **(3)**  Violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to **covered property** which substantially increases any hazard insured against under this policy;

            **(4)**  Nonpayment of membership dues in those cases in which the bylaws, agreements, or other legal instruments require payment as a condition of the issuance and maintenance of this policy; or

            **(5)**  A material violation of a material provision of this policy.

2.  Item **7.** of **F.** Cancellation is replaced with the following:

    **7.**  **a.**  If this policy is canceled, **we** will send **you** any premium refund due.

        **b.**  **We** will refund the pro rata unearned premium if the policy is:

            **(1)**  Canceled by **us** or at **our** request;

            **(2)**  Canceled but rewritten with **us** or in **our** company group; or

            **(3)**  Canceled because **you** no longer have an insurable interest in the property or business operation that is the subject of this insurance.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

## ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL (Continued)

    **c.**  If this policy is canceled at **your** request, other than a cancellation described in **7. b. (2)** and **(3)** above, **we** will refund ninety (90)% of the pro rata unearned premium.  However, the refund will be less than ninety (90)% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by **us** to an amount less than the minimum premium for this policy.

    **d.**  The cancellation will be effective even if **we** have not yet made or offered a refund.

    **e.**  If **you** cancel the policy, **we** will retain no less than $100 of the premium and **we** will retain no less than $250 of the premium if coverage is provided for equipment breakdown.

**3.**  Item **5.** of **M.** Mortgage Holders is replaced with the following:

    **5.**  If **we** decide not to renew this policy, **we** will give written notice to the mortgage holder:

        **a.**  As soon as practicable if nonrenewal is due to **your** failure to pay any premium required for renewal; or

        **b.**  At least sixty (60) days before the expiration date of this policy, if the nonrenewal is for any other reason.

**4.**  Item **1.** of **P.** Nonrenewal is replaced with the following:

    **1.**  If **we** decide not to renew this policy, **we** will mail or deliver a written notice of nonrenewal to **you** and any lien holder or loss payee named in the policy at least sixty (60) days before the expiration date of this policy.  Notice will be sent to **your** last mailing address known to **us**.  **We** will state the reason for nonrenewal.

        However, **we** are not required to send this notice if nonrenewal is due to **your** failure to pay any premium required for renewal.

    The provisions of Item **P.** Nonrenewal do not apply to any mortgage holder.

Policy number YU2-L9L-453570-011

## Arkansas Notice to Policyholders

To assist in the communication of suggestions, complaints, or comments, Arkansas Act 197, House Bill 1221 requires that policyholders know the addresses of our customer service department and the consumer division of the department of insurance. These addresses are:

LIBERTY MUTUAL INSURANCE GROUP
10800 FINANCIAL CENTRE PARKWAY
SUITE 300
LITTLE ROCK AR 72211
Telephone number:  (501) 224-4300

ARKANSAS INSURANCE DEPARTMENT
1200 W 3RD ST
LITTLE ROCK AR 72201
Telephone number:  (501) 371-2640 or
Toll-free telephone number:  1-800-852-5494

EN4003 01-10

Page  1  of  1

**Policy 87**

Policy number YU2-L9L-453570-011

## <u>DISCLOSURE - TERRORISM RISK INSURANCE ACT</u>

**THIS FORM IS MADE PART OF YOUR POLICY PURSUANT TO THE TERRORISM RISK INSURANCE ACT.**

In accordance with the Terrorism Risk Insurance Act, including all amendments ("TRIA" or the "Act"), we are required to provide you with a notice of the portion of your premium attributable to coverage for "certified acts of terrorism," the federal share of payment of losses from such acts, and the limitation or "cap" on our liability under the Act.

**Disclosure of Premium**

The Company has made available coverage for "certified acts of terrorism" as defined in the Act.  If purchased, the portion of your premium attributable to coverage for "certified acts of terrorism" is shown on the DECLARATIONS, or elsewhere by endorsement in your policy.

**Federal Participation in Payment of Terrorism Losses**

If an individual insurer's losses exceed a deductible amount specified in the Act, the federal government will reimburse the insurer for 85% of losses paid in excess of the deductible, provided that aggregate industry losses from a "certified act of terrorism" exceed $100 million.

**Cap On Insurer Participation in Payment of Terrorism Losses**

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion.  Nor shall Treasury make any payment for any portion of the amount of such losses that exceeds $100 billion.  In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.